# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

|  |  |
|---|---|
| CYPANGA SICAV SIF, Individually and on Behalf All Others Similarly Situated, | Civil Action No. 2:25-cv-01716-JPS |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | |
| FISERV, INC., MICHAEL P. LYONS, and ROBERT W. HAU, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PRESUMPTIVE LEAD PLAINTIFF'S
MOTION TO INTERVENE IN ORDER TO TRANSFER CASE
AND VACATE LEAD PLAINTIFF DEADLINE**

# TABLE OF CONTENTS

**Page**

I.    Introduction...................................................................................................... 1

II.   The Underlying Securities Fraud Claims............................................................ 2

III.  Procedural Background...................................................................................... 3

IV.  Statutory Framework for Lead Plaintiff Selection Under the PSLRA .............................. 3

V.   Presumptive Lead Plaintiff Should Be Permitted to Intervene to Transfer the Case and Vacate the Improper Notice Issued .................................................................. 6

      A.    This Motion Is Timely ................................................................ 7

      B.    The Presumptive Lead Plaintiff Has a Substantial Interest in This Case as the Anticipated Lead Plaintiff in the First-Filed Action ......................................... 7

      C.    This Case May Impair and Impede the Presumptive Lead Plaintiff's Ability to Protect Its Interests and Those of the Class ......................................... 8

      D.    Cypanga Cannot Adequately Represent Presumptive Lead Plaintiff's Interests and Those of the Class.................................................... 8

VI.  The Lead Plaintiff Deadline Should Be Vacated or Stricken ............................................. 9

VII.  This Follow-On Action Should Be Transferred to the U.S. District Court for the Southern District of New York for Consolidation Before Judge Jennifer H. Rearden ................................................................................................. 11

VIII. Conclusion ...................................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aliano v. Quaker Oats Co.*,
2017 WL 56638 (N.D. Ill. Jan. 4, 2017) .................................................................................13

*Baker v. Cassava Scis., Inc.*,
2024 WL 3580627 (N.D. Ill. May 29, 2024) ................................................................4, 5, 7, 8

*Ballotti v. Oppenheimer Funds, Inc.*,
2011 WL 13382871 (N.D. Ill. Feb. 23, 2011) ....................................................................11, 12

*In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010) ............................................................................5

*Barrington Grp., Ltd. v. Genesys Software Sys., Inc.*,
239 F. Supp. 2d 870 (E.D. Wis. 2003) ...................................................................................13

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
2018 WL 1902725 (D. Minn. Apr. 20, 2018) .........................................................................10

*Christman v. Brauvin Realty Advisors, Inc.*,
191 F.R.D. 142 (N.D. Ill. 1999) ..........................................................................................8, 9

*Cooper v. Aames Funding Corp.*,
2006 WL 8446409 (E.D. Wis. Mar. 31, 2006) ......................................................................13

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013) .........................................................................5

*Ferens v. John Deere Co.*,
494 U.S. 516 (1990) .............................................................................................................12

*Gilsinger v. Cities & Villages Mut. Ins. Co.*,
2022 WL 280902 (E.D. Wis. Jan. 31, 2022) .......................................................................6, 7

*Hom v. Vale, S.A.*,
2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ...........................................................................10

*Horowitz v. SunEdison, Inc.*,
2016 WL 1161600 (E.D. Mo. Mar. 24, 2016) .......................................................................10

*Liguria Foods, LLC v. Palermo Villa Inc.*,
2022 WL 1665105 (E.D. Wis. May 25, 2022) .........................................................................8

*Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.*,
  2017 WL 3780164 (E.D. Tex. Aug. 31, 2017) ...............................................................5, 9, 10

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
  2020 WL 1181366 (D. Conn. Mar. 10, 2020) .........................................................4, 6

*OsteoMed LLC v. Stryker Corp.*,
  2021 WL 1962393 (N.D. Ill. May 17, 2021) ...............................................................6

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
  256 F.R.D. 620 (E.D. Wis. 2009) ...............................................................................4

*Porter v. Graftech Int'l Ltd.*,
  2024 WL 2189642 (N.D. Ohio May 15, 2024)......................................................10, 11

*SEC v. Xia*,
  2024 WL 964676 (E.D.N.Y. Mar. 4, 2024) ................................................................8

*Sudunagunta v. NantKwest, Inc.*,
  2017 WL 8811608 (C.D. Cal. Feb. 6, 2017)...............................................................10

*Thomas v. Magnachip Semiconductor Corp.*,
  2015 WL 3749784 (N.D. Cal. June 15, 2015) ...........................................................10

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  629 F. Supp. 2d 1233 (D.N.M. 2009) .....................................................................4, 9

*Turner v. ShengdaTech, Inc.*,
  2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011) ...........................................................3, 4, 9

*Vanguard Prods. Grp., Inc. v. Protex Int'l. Corp.*,
  2006 WL 695700 (N.D. Ill. Mar. 14, 2006)................................................................13

*Villalobos v. Cooper Tire & Rubber Co.*,
  2005 WL 8179132 (N.D. Ill. Oct. 25, 2005)...........................................................12, 13

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*,
  899 F. Supp. 2d 235 (E.D.N.Y. 2012) ..................................................................13, 14

**Rules & Statutes**

Fed. R. Civ. P. 24 *et seq.*.......................................................................................6, 7, 8

15 U.S.C. § 78u–4 *et seq.*........................................................................... *passim*

28 U.S.C. § 1404(a) ...........................................................................................11, 12, 13

**Docketed Case**

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 16-cv-06728 (S.D.N.Y.), ECF Nos. 93, 100 ...............................................................4, 11

## I. Introduction

Four months ago, the U.S. District Court for the Southern District of New York received the first-filed securities class action against Fiserv, Inc. ("Fiserv" or the "Company") and its senior executives, including defendants Michael P. Lyons and Robert W. Hau. That action, *City of Hollywood Police Officers' Retirement System v. Fiserv, Inc.*, No. 25-cv-06094 (S.D.N.Y.) (the "First-Filed Action"), alleges violations of the Securities Exchange Act of 1934 ("Exchange Act") arising from Fiserv's false and misleading statements regarding its growth metrics and projections. Lead plaintiff motions were filed months ago and have since been resolved, leaving ETHENEA Independent Investors S.A. and the City of Hollywood Police Officers' Retirement System and City Pension Fund for Firefighters and Police Officers in the City of Miami Beach (collectively, the "Presumptive Lead Plaintiff") as the sole unopposed movants for leadership in that case.

Despite that ongoing proceeding, Cypanga Sicav SIF ("Cypanga") and its counsel, Scott+Scott Attorneys at Law LLP ("Scott+Scott"), have now filed this duplicative follow-on action in this Court (the "Follow-On Action"), far from the pending litigation and the locus of operative facts. Their complaint recycles the same claims and allegations already at issue in the First-Filed Action, merely alleging a brief "stub period" following the end of the Class Period in the First-Filed Action. Scott+Scott then issued a misleading notice advising investors of a new lead plaintiff deadline, notwithstanding that the statutory period has long since closed under the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Cypanga's and Scott+Scott's maneuver is a transparent attempt to evade the PSLRA's orderly leadership framework and the judicial economy of both this Court and the Southern District of New York. Moreover, Cypanga's claimed loss of $606,162 pales in comparison to the over $7.1 million in losses suffered by the Presumptive Lead Plaintiff. Accordingly, the Presumptive Lead Plaintiff respectfully moves to intervene, vacate the January 5, 2026 lead plaintiff deadline,

and transfer this duplicative action to the Southern District of New York for consolidation with the First-Filed Securities Action.

## II.     The Underlying Securities Fraud Claims

Both this Follow-On Action and the First-Filed Action allege violations of the Exchange Act and SEC Rule 10b-5 against Defendants Fiserv, Lyons, and Hau arising out of the same course of conduct: misrepresentations regarding Fiserv's organic growth metrics and business performance.[1] *Compare* First-Filed Action ECF No. 1, ¶¶ 1-10, *with* ECF No. 1, ¶¶ 20-33.[2]

Specifically, throughout the Class Period (July 24, 2024 to July 22, 2025), the First-Filed Complaint alleges that Defendants misrepresented Fiserv's organic growth rate and falsely assured investors of strong financial momentum, despite internal data showing material deterioration. First-Filed Action ECF No. 1, ¶ 8. Defendants' fraud, and Fiserv's slowing growth, was divulged to investors in a series of disclosures which began to reveal that Fiserv's growth had been temporarily inflated and its forward-looking growth was far weaker than Defendants had stated. *Id.* ¶¶ 55, 61, 70. These revelations included Fiserv's announcement on July 23, 2025 that it was drastically lowering its organic growth projections. *Id.* ¶ 70.

The October Disclosure, alleged in this Follow-On Action, is a clear continuation of the *exact same fraud*. The October Disclosure merely demonstrated that the state of affairs within Fiserv was even worse than previously disclosed, as the Company once again lowered its projected organic growth. ECF No. 1, ¶¶ 30-31. Indeed, ***Defendant Lyons explained that this downward revision was a continuation of the same revision the Company had announced in July***, which is

---

[1] In addition, the First-Filed Action named two other Fiserv executives as defendants. First-Filed Action ECF No. 1.

[2] Unless otherwise indicated, all references to "ECF" references are to the docket in this Follow-On Action.

included in the First-Filed Action. *Id.* ¶ 36. Further, Defendants explained that Fiserv's inflated projections stemmed from conduct going back at least six months (April 2025), which therefore began during the class period asserted in the First-Filed Action. *Id.* ¶ 40. Defendants also explained that the analysis provided to investors in July 2025 was "incomplete" and that the October Disclosure constituted a more fulsome revelation of the information disclosed in July. *Id.* ¶ 58. Therefore, the October Disclosure and the allegations in this Follow-On Action are a simple continuation of the same fraudulent conduct alleged in the First-Filed Action.

## III. Procedural Background

The initial complaint in the First-Filed Action was filed on July 24, 2025 in the U.S. District Court for the Southern District of New York. First-Filed Action ECF No. 1. On September 22, 2025, all lead plaintiff motions were due pursuant to 15 U.S.C. § 78u–4(a)(3)(A). The Presumptive Lead Plaintiff's application for appointment as lead plaintiff in the First-Filed Action is unopposed. *Id.* ECF No. 44.

Over a month later, on November 4, 2025, Cypagna filed this case alleging identical Exchange Act claims and naming three of the defendants named in the First-Filed Action. The Follow-On Action's alleged class period runs from July 23, 2025 (one day after the First Filed Action ends) to October 29, 2025, and thus overlaps entirely with the same underlying fraud and disclosure sequence.

Thereafter, Scott+Scott published a separate notice to investors, purporting to open a new lead plaintiff deadline of January 5, 2026, an act plainly inconsistent with the PSLRA and designed to disrupt the leadership structure already in place in the First-Filed Action.

## IV. Statutory Framework for Lead Plaintiff Selection Under the PSLRA

The PSLRA details the form and timing of notice for applications for appointment as lead plaintiff in securities class actions brought under the federal securities laws. *See Turner v.*

*ShengdaTech, Inc.*, 2011 WL 6110438, at *2-3 (S.D.N.Y. Dec. 6, 2011) (citing 15 U.S.C. § 78u–4(a)(3)(A)).[3] This statutory scheme contemplates a single notice period as the general rule. *See In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233, 1239 (D.N.M. 2009) (finding that "the PSLRA seems to view the notice as being a threshold issue that comes up at the beginning of the filing of a lawsuit"). The plain text of the statute provides that if any subsequent action asserting "substantially the same claim or claims," such as the Follow-On Action, is filed, "only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published." 15 U.S.C. § 78u–4(a)(3)(A)(ii).

Moreover, "nothing in the PSLRA limits the class period [in an amended consolidated complaint] to the period identified in the first notice." *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624 n.6 (E.D. Wis. 2009). Accordingly, courts uniformly recognize that follow-on actions alleging the same claims and the same theories of fraud during a subsequent stub period must be consolidated with the first-filed action under the existing leadership structure to avoid duplicative and unnecessary litigation. *See Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 2020 WL 1181366, at *8 (D. Conn. Mar. 10, 2020) (consolidation appropriate because "the conduct alleged in the [later-filed] complaint is a clear continuation of the conduct alleged in the [first-filed case]"); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-06728 (S.D.N.Y.), ECF Nos. 93, 100 (consolidating latter-filed case alleging a "stub period" with earlier filed action).

This approach vindicates the lead plaintiff's authority under the PSLRA "to control the management of the litigation as a whole, and . . . decide what claims to assert on behalf of the

---

[3] Unless otherwise noted all emphasis is added and internal quotation marks and citations are omitted.

-4-

class." *Baker v. Cassava Scis., Inc.*, 2024 WL 3580627, at *6 (N.D. Ill. May 29, 2024); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 2013 WL 4399215, at *3 (S.D.N.Y. Aug. 13, 2013) (recognizing that "a lead plaintiff has the sole authority to determine what claims to pursue on behalf of the class"); *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010) ("[I]n a securities class action, a lead plaintiff is empowered to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to assert on behalf of the class."). Stated differently, "variations in class definition do not defeat consolidation or justify a proliferation of overlapping classes." *Facebook*, 2013 WL 4399215, at *6. The reason is simple: "if a parallel class action were to be permitted, both actions would therefore seek recovery for the same absent class members." *Id.* at *5. As the court concluded in *Facebook*, "[s]uch conflicts are avoided by having Lead Plaintiffs control a single consolidated action on behalf of a unitary putative class." *Id.*

By contrast, allowing putative class members to initiate redundant actions, such as this lawsuit, each time a new fact emerges would interfere with the lead plaintiff's statutorily mandated authority to effectively manage the existing litigation in an efficient and diligent manner that is in the best interests of the putative class. *See Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.*, 2017 WL 3780164, at *3 (E.D. Tex. Aug. 31, 2017) (recognizing that "a new notice is not automatic because issuing a new notice after each new complaint or amendment could cause appointment of lead counsel [to] be delayed indefinitely . . . [, and s]uch result would clearly thwart the intent of the PSLRA") (alteration in original). To prevent Cypanga and Scott+Scott from undermining the PSLRA's statutory framework and usurping the Presumptive Lead Plaintiff's position, this Court should permit the Presumptive Lead Plaintiff to intervene, vacate the improperly issued notice that

set January 5, 2026 as the deadline for seeking appointment as lead plaintiff in this case, and transfer this Follow-On Action to the Southern District of New York, where Presumptive Lead Plaintiff will include the stub period in its amended or consolidated complaint.

## V. Presumptive Lead Plaintiff Should Be Permitted to Intervene to Transfer the Case and Vacate the Improper Notice Issued

"On timely motion, a court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Alternatively, a court "may permit" anyone to intervene who: "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Pursuant to Rule 24, "a movant must be permitted to intervene in an action if: (1) the application is timely; (2) the applicant 'claims an interest relating to the property or transaction that is the subject of the action;' (3) the disposition of the action may as a practical matter impair or impede the movant's ability to protect its interest; and (4) existing parties are not adequate representatives of the applicant's interest." *Gilsinger v. Cities & Villages Mut. Ins. Co.*, 2022 WL 280902, at \*6 (E.D. Wis. Jan. 31, 2022), *corrected by*, 2022 WL 1289319 (E.D. Wis. Apr. 29, 2022); *see also Teva Pharm. Indus.*, 2020 WL 1181366, at \*17 ("[C]ourts equate mandatory and permissive intervention and require that [t]o be granted intervention as of right or by permission, an applicant must satisfy the requirements of intervention as of right."). Courts in this Circuit have consistently held that "[i]n either case, Rule 24 should be liberally construed in favor of potential intervenors." *OsteoMed LLC v. Stryker Corp.*, 2021 WL 1962393, at \*2 (N.D. Ill. May 17, 2021).

As the unopposed and presumptive lead plaintiff in the First-Filed Action, the Presumptive Lead Plaintiff is entitled to intervene under either Rule 24(a)(2) or (b)(1)(B) to transfer the case and vacate the improper notice issued.

### A.       This Motion Is Timely

Under Rule 24, the threshold inquiry is whether a motion for intervention is timely.  "[T]he Seventh Circuit has described the timeliness requirement as preventing a tardy intervenor from derailing a lawsuit within sight of the terminal."  *Villages Mut. Ins. Co.*, 2022 WL 280902, at *6. Here, the Follow-On Action was filed on November 4, 2025, and the January 5, 2026 purported lead plaintiff deadline has not yet run.  The Follow-On Action is nowhere near its terminal.  *See Cassava Scis.*, 2024 WL 3580627, at *4 (finding that, where the PSLRA notice period had not run "the terminal for this case is nowhere in sight").  The motion is therefore timely.

### B.       The Presumptive Lead Plaintiff Has a Substantial Interest in This Case as the Anticipated Lead Plaintiff in the First-Filed Action

The second factor in determining whether a motion to intervene should be granted is whether the proposed intervenor can claim "an interest relating to the property or transaction that is the subject of the action."  Fed. R. Civ. P. 24(a)(2).  "The interest of a would-be intervenor, as required by Rule 24, must be a direct, significant, legally protectable one."  *Villages Mut. Ins. Co.*, 2022 WL 280902, at *6.  The Seventh Circuit has recognized "statements of the Supreme Court as encouraging liberality in the definition of an interest."  *Cassava Scis.*, 2024 WL 3580627, at *5.

The factual and legal issues to be resolved in this case are nearly identical to those at issue in the First-Filed Action, and the PSLRA dictates that the Presumptive Lead Plaintiff will be charged with protecting the interests of Fiserv investors.  *See supra* §§ II-III.  Therefore, the Presumptive Lead Plaintiff has a direct and substantial interest in consolidating this Follow-On Action with the First-Filed Action and ensuring that investors' claims are prosecuted efficiently as

part of the First-Filed Action. *See Cassava Scis.*, 2024 WL 3580627, at \*6 (finding, in a similar instance, that the lead plaintiff in a first-filed action had an interest in the latter-filed action due to "similarities" between the two lawsuits"). Consequently, the Presumptive Lead Plaintiff has demonstrated an undeniable interest in this Follow-On Action.

**C.** **This Case May Impair and Impede the Presumptive Lead Plaintiff's Ability to Protect Its Interests and Those of the Class**

"The third element of the intervention-as-of-right standard concerns whether the putative intervenor can demonstrate that, absent intervention, the disposition of the action may, as a practical matter, impair or impede its interests." *SEC v. Xia*, 2024 WL 964676, at \*11 (E.D.N.Y. Mar. 4, 2024). Specifically, "[i]mpair refers to a diminution in strength, value, quality, or quantity." *Id.* If Cypanga (or another investor after the lead plaintiff deadline in the Follow-On Action) were allowed to prosecute this duplicative action separately from the First-Filed Action, there is a risk that this case would proceed on a different timeline with inconsistent rulings and therefore impair the Presumptive Lead Plaintiff's ability to prosecute the case on behalf of the putative class.

**D.** **Cypanga Cannot Adequately Represent Presumptive Lead Plaintiff's Interests and Those of the Class**

Under Rule 24(a)(2), a "party seeking intervention as of right must only make a showing that the representation may be inadequate, and the burden of making that showing should be treated as minimal." *Liguria Foods, LLC v. Palermo Villa Inc.*, 2022 WL 1665105, at \*2 (E.D. Wis. May 25, 2022). Here, denying intervention would reward the filing of a wholly duplicative copycat case in a clear attempt to circumvent the PSLRA lead plaintiff selection process at work in the First-Filed Action. *See Christman v. Brauvin Realty Advisors, Inc.*, 191 F.R.D. 142, 151 (N.D. Ill. 1999) (recognizing that the most adequate plaintiff presumption "is not an open-ended presumption" that can be asserted anew "whenever [a challenger] wants to seize control of the

litigation," particularly where the challenger "never made a motion for appointment as lead plaintiff"); *Thornburg Mortg.*, 629 F. Supp. at 1240 (recognizing that "[l]itigation is an ongoing process, and it is not surprising that new time periods might come under the umbrella of a particular case as time passes" and declining to allow the restarting of the lead plaintiff process).

Accordingly, because Presumptive Lead Plaintiff satisfies all of the criteria for intervention, its motion should be granted.

## VI.    The Lead Plaintiff Deadline Should Be Vacated or Stricken

Because the October Disclosure is a clear continuation of the revelations alleged in the First-Filed Action, the Presumptive Lead Plaintiff, in its role as fiduciary for the class, will add the October Disclosure to the allegations in the First-Filed Action in its amended complaint, entirely subsuming the Follow-On Action. Despite that clear redundancy, Cypanga unnecessarily filed this Follow-On Action in a different jurisdiction to avoid consolidation, and its lawyers, Scott+Scott, issued a press release advising investors of their supposed right to seek lead plaintiff appointment no later than January 5, 2026. This is an improper attempt to restart the statutorily mandated lead plaintiff selection process already resolved in the First-Filed Action and must be rejected. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff . . . in the first filed action shall be required to cause notice to be published.").

Consistent with the PSLRA's mandate, courts "disfavor republication of notice under [the] PSLRA when a Class Period is extended beyond the period contained in the first-filed securities class action." *ShengdaTech*, 2011 WL 6110438, at *3 (rejecting the need for new notice where a newly filed complaint expanded a class period by approximately two years); *Okla. Law Enf't*, 2017 WL 3780164, at *3 ("While the allegations are more expansive in the [latter-filed complaints], they are not entirely new legal or factual allegations nor do they include an entirely new class of

securities. The new complaints changed the class period, but ***simply changing the class period does not necessitate a new notice*** be sent out.").[4] "Instead, courts generally require republication of notice ***only where*** the amended complaint substantially alters the claims or class members." *Hom v. Vale, S.A.*, 2016 WL 880201, at \*4 (S.D.N.Y. Mar. 7, 2016).[5] Therefore, the Presumptive Lead Plaintiff in the First-Filed Action must be empowered to prosecute all relevant claims, including the claims in this Follow-On Action, on behalf of the class without the needless sideshow created through this new lead plaintiff process. *See CenturyLink*, 2018 WL 1902725, at \*5 (rejecting a request to open a new lead plaintiff appointment process where "the interests of the class are fully protected and there is no need to appoint separate leadership.").

Moreover, the relevant deadline to file a request to be lead plaintiff expired on the date to do so in the First-Filed Action (September 22, 2025). Accordingly, the Follow-On Action's supposed January 5, 2026 lead plaintiff deadline is also time-barred. *See CenturyLink*, 2018 WL 1902725, at \*5-6 ("The PSLRA has a strict deadline for filing lead plaintiff motions, stemming from Congress's intent to have lead plaintiffs appointed as soon as practicable."); *Porter v. Graftech Int'l Ltd.*, 2024 WL 2189642, at \*8 (N.D. Ohio May 15, 2024) ("The PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action. The plain language of the statute

---

[4] *See also Sudunagunta v. NantKwest, Inc.*, 2017 WL 8811608, at \*4 (C.D. Cal. Feb. 6, 2017) (finding no republication of notice required even after the relevant class period was expanded); *Horowitz v. SunEdison, Inc.*, 2016 WL 1161600, at \*2 (E.D. Mo. Mar. 24, 2016) (finding that the "PSLRA does not require republication of notice" where original case and subsequent case assert "'substantially the same claim or claims,'" even where class period is expanded).

[5] *See also In re CenturyLink Sales Pracs. & Sec. Litig.*, 2018 WL 1902725, at \*5 (D. Minn. Apr. 20, 2018) (recognizing that courts only appoint separate lead plaintiffs when there are "***vast differences*** between the classes the lead plaintiffs sought to represent"); *Thomas v. Magnachip Semiconductor Corp.*, 2015 WL 3749784, at \*4 (N.D. Cal. June 15, 2015) (declining to require a new notice, despite the fact that "the class period length has expanded" because the action still centered on "the same factual scenario . . . that was presented in [the] original complaint").

precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed.").

*In re Signet Jewelers Ltd. Securities Litigation* is instructive. There, the court was faced with the same circumstance when a "stub" action was filed alleging a class period that started just after the end of the class period alleged in the operative complaint. No. 16-cv-06728 (S.D.N.Y.), ECF No. 93. The court *sua sponte* accepted this follow-on action as related to the first filed action and required the law firm which filed the follow-on action to "show cause in writing . . . why sanctions should not be imposed for failure to designate [the follow-on action] as related to [the first filed action]." *Id.*, ECF No. 95. Ultimately, the court consolidated both actions and vacated the notice issued in the follow-on action. *Id.*, ECF No. 100.

Because the improper notice should never have been issued, the Court should vacate the January 5, 2026 lead plaintiff deadline and require a corrected notice be published informing investors that the deadline to file motions for lead plaintiff has passed.[6]

## VII. This Follow-On Action Should Be Transferred to the U.S. District Court for the Southern District of New York for Consolidation Before Judge Jennifer H. Rearden

The next step is to transfer this case pursuant to 28 U.S.C. § 1404(a). In determining whether to transfer, courts in this Circuit have explained that "[t]he purpose of § 1404(a) is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Ballotti v. Oppenheimer Funds, Inc.*, 2011 WL 13382871, at *3 (N.D. Ill. Feb. 23, 2011).

The threshold inquiry is whether this Follow-On Action could have been brought originally in the transferee forum, the Southern District of New York. *See* 28 U.S.C. § 1404(a). The answer

---

[6] A proposed form of a corrective press release is attached as Exhibit A attached to the [Proposed] Order, submitted concurrently herewith.

is plainly yes.  A related securities action arising out of the same core facts is already pending in that district, which is also where defendants carried out their alleged fraudulent scheme and disseminated the challenged statements concerning the Company's business.  First-Filed Action ECF No. 1, ¶ 15.  The Southern District of New York has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, and venue is proper because that court has personal jurisdiction over defendants under 28 U.S.C. § 1391(b) and § 27 of the Exchange Act.  *Id*. ¶¶ 14-15.  Given the widespread publicity of the First-Filed Action, which was advertised by more than a dozen law firms through over 200 investor notices, Cypanga and Scott+Scott were plainly aware, or should have been aware, of its existence.  *See, e.g.*, First-Filed Action ECF No. 26-4 (initial notice published in the First-Filed Action).  Thus, even if Cypanga had a legitimate basis for filing this redundant Follow-On Action (and it does not), it should have been filed in the Southern District of New York.  Cypanga did not do so because it (and its lawyers) knew it would be consolidated into the First-Filed Action.

Transferring the Follow-On Action to the Southern District of New York would also promote judicial efficiency.  *See Ballotti*, 2011 WL 13382871, at *6 (transferring an action to a district where cases "concerning nearly identical facts and allegations are pending," because "[t]ransfer to that district will save judicial resources, as well as the time and energy of the litigants and witnesses involved"); *see also Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (parallel litigation "leads to the wastefulness of time, energy and money that §1404(a) was designed to prevent").  Here, the facts and legal theories giving rise to the claims in both actions are the same and the First-Filed Action names the same defendants as the Follow-On Action.  *See supra* § II. Allowing both actions to proceed separately would risk inconsistent rulings, duplicative discovery, and needless expenditure of judicial resources.  *See Villalobos v. Cooper Tire & Rubber Co.*, 2005

WL 8179132, at *2 (N.D. Ill. Oct. 25, 2005) ("The interests of judicial economy are clearly served by transferring this case because potential consolidation would avoid duplicative litigation of both factual and legal issues and would avoid the possibility of contradictory outcomes."). Accordingly, this case should be transferred to the U.S. District Court for the Southern District of New York and consolidated with the First-Filed Action. *See Cooper v. Aames Funding Corp.*, 2006 WL 8446409, at *2 (E.D. Wis. Mar. 31, 2006) (finding that the "interests of justice clearly favors transfer under § 1404(a)" where "[t]he court and the parties can avoid duplication of time and effort as well as the risk of inconsistent outcomes by transferring the [second-filed] action . . . for consolidation with the earlier filed case"); *Aliano v. Quaker Oats Co.*, 2017 WL 56638, at *3 (N.D. Ill. Jan. 4, 2017) ("Cases in which the interest-of-justice element may be determinative include those where there is related litigation in a forum where consolidation is feasible.").

This Follow-On Action should also be transferred to comply with the long-established principle that where, as here, there are "two [or more] competing lawsuits, the first suit should have priority," absent special circumstances. *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 243 (E.D.N.Y. 2012) (transferring case to jurisdiction where first-filed case was pending); *see also Barrington Grp., Ltd. v. Genesys Software Sys., Inc.*, 239 F. Supp. 2d 870, 873 (E.D. Wis. 2003) (finding that "there is a presumption that the first-filed case should be allowed to go forward and the second case abated" absent special circumstances); *Vanguard Prods. Grp., Inc. v. Protex Int'l. Corp.*, 2006 WL 695700, at *5 (N.D. Ill. Mar. 14, 2006) ("For the presumption of the first-to-file rule to be overcome, there must be a clear showing that it would be unjust or inefficient for the first-filed lawsuit to proceed."). Indeed, the "Supreme Court has acknowledged that application of the first-filed rule promotes wise judicial administration, giving regard to

conservation of judicial resources and comprehensive disposition of litigation." *Wyler-Wittenberg*, 899 F. Supp. 2d at 244.

For all these reasons, the Court should transfer this case to the Southern District of New York.

## VIII.    Conclusion

Because this Follow-On Action is clearly a continuation of the First-Filed Action, the Presumptive Lead Plaintiff should be permitted to intervene, and this case should be transferred to the U.S. District Court for the Southern District of New York so it can be consolidated with the First-Filed Action.  Moreover, the duplicative notice issued to investors by Scott+Scott of the non-existent right to seek appointment as lead plaintiff on January 5, 2026 in connection with the filing of this duplicative Follow-On Action was improper and should be vacated as soon as practicable.

DATED: November 14, 2025                          Respectfully submitted,

**BARTON CERJAK S.C.**

*/s/ James B. Barton*
James B. Barton
WI Bar No. 1068900
313 North Plankinton Ave., Suite # 207
Milwaukee, WI  53203
Telephone: (414) 488-1822
jbb@bartoncerjak.com

*Liaison Counsel for Presumptive Lead Plaintiff*

**MOTLEY RICE LLC**
Christopher F. Moriarty (*admission forthcoming*)
SC Bar No. 100187
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
cmoriarty@motleyrice.com

*Counsel for Presumptive Lead Plaintiff and Proposed Lead Counsel for the Class*

**LABATON KELLER SUCHAROW LLP**
Francis P. McConville (*admission forthcoming*)
NY Bar No. 4740338
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com

*Additional Counsel for Hollywood Police Officers' Retirement System and City Pension Fund for Firefighters and Police Officers in the City of Miami Beach*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Robert D. Klausner (*admission forthcoming)*
FL Bar No. 244082
Stuart A. Kaufman (*admission forthcoming*)
FL Bar No. 979211
7080 NW 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for City of Hollywood Police Officers' Retirement System and City Pension Fund for Firefighters and Police Officers in the City of Miami Beach*