# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CYPANGA SICAV SIF, Individually and on Behalf and All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>FISERV, INC., MICHAEL P. LYONS, and ROBERT W. HAU,<br><br>     Defendants. | Civil Action No. 2:25-cv-01716<br><br>CLASS ACTION |

## PLAINTIFF'S OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE, TRANSFER, AND VACATE LEAD-PLAINTIFF DEADLINE

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

I.    BACKGROUND ......................................................................................................3

      A.    The New York Action .................................................................................3

      B.    The Wisconsin Action ................................................................................4

II.   PROCEDURAL BACKGROUND ..........................................................................6

III.  ARGUMENT ..........................................................................................................8

      A.    Cypanga Does Not Oppose Permissive Intervention for the Limited Purpose of
            Making the Present Motion ........................................................................8

      B.    Because the Wisconsin Action Is Both Temporally and Factually Distinct, the
            Lead Plaintiff Deadline Should Not Be Vacated or Stricken.....................9

            1.    Legal Standard....................................................................................9

            2.    The New York Action PSLRA Notice Does Not Cover the Distinct Claims
                  Asserted in the Wisconsin Action....................................................11

      C.    The Proposed Intervenors Have Not Carried Their Burden to Justify Transfer to the
            Southern District of New York .................................................................13

            1.    The Transfer Motion Rests Almost Entirely on the Incorrect Notion that the
                  Wisconsin and New York Actions Are Identical ...............................13

            2.    Transfer Is Clearly Inappropriate Under Seventh Circuit Law ..........15

CONCLUSION...............................................................................................................17

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdou v. Mahany*,
2019 WL 764742 (E.D. Wis. Feb. 21, 2019) ...................................................15, 16

*Aliano v. Quaker Oats Co.*,
2017 WL 56638 (N.D. Ill. Jan. 4, 2017) ...............................................................14

*Baker v. Cassava Scis., Inc.*,
2024 WL 3580627 (N.D. Ill. May 29, 2024) ...........................................................8

*Ballotti v. Oppenheimer Funds, Inc.*,
2011 WL 13382871 (N.D. Ill. Feb. 23, 2011) .......................................................14

*Barrington Grp., Ltd. v. Genesys Software Sys., Inc.*,
239 F. Supp. 2d 870 (E.D. Wis. 2003) ...................................................................14

*Borenstein v. Finova Grp. Inc.*,
2000 WL 34524743 (D. Ariz. Aug. 30, 2000) .......................................................13

*Bowen v. Groome*,
2011 WL 13099036 (S.D. Ill. May 3, 2011) ..........................................................16

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*,
2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015) ......................................................17

*In re Cloudera Inc., Secs. Litig.*,
2020 WL 1288362 (N.D. Cal. March 18, 2020) .....................................................11

*Coll. Ret. Equities Fund v. Boeing Co.*,
2025 WL 1207313 (N.D. Ill. Apr. 25, 2025) .....................................................15, 16

*Cooper v. Aames Funding Corp.*,
2006 WL 8446409 (E.D. Wis. Mar. 31, 2006) .......................................................14

*Hachem v. Gen. Elec. Inc.*,
2018 WL 1779345 (S.D.N.Y. April 12, 2018) ...................................................10, 12

*Harman v. LyphoMed, Inc.*,
122 F.R.D. 522 (N.D. Ill. 1988) ...............................................................................6

*In re Hartmarx Secs. Litig.*,
2002 WL 31103491 (N.D. Ill. Sept. 19, 2002) ........................................................6

ii

*Heller Fin., Inc. v. Midwhey Powder Co.*,
    883 F.2d 1286 (7th Cir. 1989) ........................................................................13

*Kaplan v. S.A.C. Cap. Advisors L.P.*,
    947 F. Supp. 2d 366 (S.D.N.Y. 2013)..............................................................10

*Kipling v. Flex Ltd.*,
    2019 WL 1472358 (N.D. Cal. April 3, 2019) ...........................................10, 12

*In re Leapfrog Enters. Inc. Secs. Litig.*,
    2005 WL 5327775 (N.D. Cal. July 5, 2005)............................................10, 12

*Lombard v. Fiserv Inc. et al.*,
    No. 2:25-cv-01786 (E.D. Wis. Nov. 14, 2025) ...........................................1, 7, 8

*In re Neopharm, Inc. Secs. Litig.*,
    225 F.R.D. 563 (N.D. Ill. 2004) ........................................................................6

*Paul v. Lands' End, Inc.*,
    742 F. Supp. 512 (N.D. Ill. 1990) ...................................................................16

*Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
    626 F.3d 973 (7th Cir. 2010) ..........................................................................15

*Saddy v. Agnesian Health Care*,
    2017 WL 570787 (E.D. Wis. Feb. 13, 2017) ..................................................16

*SEC v. Brda*,
    2024 WL 4817475 (S.D.N.Y. Nov. 18, 2024)................................................17

*TAS Distrib. Co. v. Cummins Engine Co.*,
    491 F.3d 625 (7th Cir. 2007) ..........................................................................16

*Teamsters Loc. 445 Freight Div. Pen. Fund v. Bombardier Inc.*,
    2005 WL 1322721 (S.D.N.Y. Jun. 1, 2005) ..................................................10

*Turner v. ShengdaTech, Inc.*,
    2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011) ..................................................12

*United States v. AseraCare, Inc.*,
    2012 WL 187519 (E.D. Wis. Jan. 23, 2012)...................................................15

*Vanguard Prods. Grp., Inc. v. Protex Int'l Corp.*,
    2006 WL 695700 (N.D. Ill. Mar. 14, 2006)....................................................15

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*,
    899 F. Supp. 2d 235 (E.D.N.Y. 2012) ............................................................14

**Statutes**

28 U.S.C §1404(a) ......................................................................................13, 15

Private Securities Litigation Reform Act ("PSLRA") ........................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 24

    (a)(2) ....................................................................................................9

    (b)(1) ....................................................................................................8

## INTRODUCTION

On July 24, 2025, the City of Hollywood Police Officers' Retirement System ("Hollywood") filed a securities class action in the Southern District of New York against Fiserv Inc. ("Fiserv" or the "Company"), a global provider of transaction processing software for banks and retail merchants that is incorporated in Wisconsin and headquartered in Milwaukee. That action[1] (herein referred to as the "New York Action") alleges that, between July 24, 2024 and July 22, 2025, Fiserv artificially inflated the performance of its Clover payment business by secretly migrating existing customers from its Payeezy platform onto Clover. This fraud ended on July 22, 2025, when Fiserv allegedly "fully revealed" the Clover-Payeezy scheme.

The securities class action pending before this Court (the "Wisconsin Action") is entirely different. This Wisconsin Action, which was filed on November 4, 2025, alleges that on July 23, 2025, Fiserv and its new CEO misleadingly assured investors that the Company's financial projections were sound as of July 2025 because Fiserv's management had recently engaged in a comprehensive re-underwriting of the Company's business and projects. ECF No. 1. Thousands of investors relied on these statements to purchase Fiserv stock in the months after July 23, 2025. These investors lost billions of dollars when, on October 29, 2025, the Company revealed that it had not actually conducted a comprehensive re-underwriting of its business and that its financial forecasts were based on assumptions that were "objectively difficult" to obtain. These revelations caused the price of Fiserv to plunge by roughly 50 percent.[2]

---

[1]    *City of Hollywood Police Officers' Retirement Sys. v. Fiserv,* Case No. 1:25-cv-06094-JHR (S.D.N.Y. July 24, 2025).

[2]    A second securities class action was filed in the Eastern District of Wisconsin on November 14, 2025. *See Lombard v. Fiserv Inc.*, No. 2:25-cv-01786 (E.D. Wis. Nov. 14, 2025) (the "*Lombard* Action").

Notwithstanding the differences between these actions, the newly minted lead plaintiffs in the New York Action seek to intervene to argue that the lead plaintiff deadline in this Wisconsin Action should be vacated and that this case should be subsumed into the New York Action. According to the New York Plaintiffs (the "New York Plaintiffs"), the thousands of putative class members in this Wisconsin Action have no right to bring an independent action or seek appointment as lead plaintiff.

The Court should deny the New York Plaintiffs' request. Contrary to their assertion, the New York Plaintiffs' status as the lead plaintiff in one securities case against Fiserv does not give them the right to dictate how and whether the claims in this case are prosecuted. Rather, the New York Action can only subsume this case if the Private Securities Litigation Reform Act ("PSLRA") notice issued in the New York Action can fairly be read to apply to the claims at issue in this case. The New York Plaintiffs cannot meet this standard because the claims in this action are both temporally and factually distinct from the claims in the New York Action. There is no temporal overlap between the two cases. The class periods do not overlap and the first misstatement in the Wisconsin Action occurs after the fraud in the New York Action had been "fully revealed." The two actions are factually different as well. This action is not about the Clover fraud; it is about false assurances about the re-underwriting process and the failure to disclose faulty assumptions underlying Fiserv's projections. The core aspects of each case—i.e., the alleged statements, adverse facts, and loss causation dates—are all different. Under these circumstances, it is uncontroversial that the New York PSLRA notice does not apply.

Finally, the New York Plaintiffs have clearly failed to carry their burden to justify a transfer away from this District, where Fiserv is headquartered, to the Southern District of New York.

2

Accordingly, the Court should deny the New York Plaintiffs' motion in full.[3]

## I.   BACKGROUND

The Wisconsin Action and the New York Action are factually distinct actions that involve: (i) different time periods; (ii) different misstatements; (iii) different defendants; (iv) different theories of fraud; (v) different class members; and (vi) different loss causation dates.

### A.   The New York Action

Fiserv is a global provider of transaction processing software for banks and retail merchants. New York Complaint ¶3.[4]  Fiserv has multiple businesses, including Carat, CashFlow Central, Experience Digital, Finxact, and Clover.  Declaration of Thomas L. Laughlin, IV ("Laughlin Decl.") Ex. 1 at 2, 4-5.  In 2024, Fiserv's businesses generated revenue of $20.5 billion.  *Id.*  Clover, the subject of the New York Action, generated $2.7 billion of revenue in 2024.  Laughlin Decl. Ex. 2 at 7.

The factual theory of the New York Action is that, between July 24, 2024 and July 22, 2025, Fiserv artificially inflated the performance of its Clover business by converting existing customers from the Company's legacy Payeezy platform without telling investors that this was the source of Clover's strength:

> Fiserv misled investors by artificially inflating its growth numbers through compelled migration of legacy customers using Payeezy, the Company's older point-of-sale ("POS") platform, to Clover, its expensive and feature-heavy POS platform. As this forced migration increased Fiserv's headline growth numbers, Defendants falsely claimed that this growth was being driven by new customers organically signing up for Clover.

New York Complaint ¶¶1-2, 8 (setting forth the alleged ways in which Fiserv's undisclosed use of reliance on Payeezy conversions misled investors); *see also* New York Action ECF No. 39 at 6

---

[3]    Plaintiff does not oppose permissive intervention by the New York Plaintiffs for the limited purpose of making this Motion.
[4]    The caption for the New York Action is *City of Hollywood Police Officers' Retirement System v. Fiserv, Inc.*, No. 25-6094 (S.D.N.Y.).

(acknowledging that the New York Action is about "Clover" and "largely focuses on financial metric called gross payment volume" "which represents the total monetary value of transactions [Fiserv] processed through the Clover platform.")

The misstatements in the New York Complaint relate to Clover's performance and are allegedly false and misleading due to the failure to disclose Fiserv's reliance on Payeezy conversions to boost Clover's growth and the subsequent problems that arose with that strategy. New York Complaint ¶¶30-54.

The New York Complaint alleges that by July 23, 2025, the Clover-related fraud was over because "Defendants' fraud was fully revealed." *Id.* ¶70. According to the New York Complaint, investors learned about the true facts regarding Clover on three disclosure dates: April 24, 2025, May 15, 2025, and July 23, 2025. *Id.* ¶¶55-73. After July 23, 2025, investors were on notice of the Clover fraud and, accordingly, the artificial inflation caused by the alleged misstatements had left the stock. *See* New York Action, ECF No. 39 at 6-8 (admitted that fraud was "largely revealed" by May 2025 and fully revealed by July 2025); New York Action, ECF No. 43 at 2-3 (arguing that the stock price inflation alleged in the complaint "persisted" until "July 23, 2025.").

The New York Action asserts claims on behalf those who purchased or acquired Fiserv stock between July 24, 2024 and July 22, 2025. New York Complaint ¶1. There are four defendants. In addition to Fiserv, the New York Complaint asserts claims against Frank J. Bisignano, the Company's former CEO, Kenneth F. Best, the Company's Chief Accounting Officer, Michael P. Lyons, the Company's new CEO, and Robert W. Hau, the Company's CFO. *Id.* ¶¶19-22.

### B. The Wisconsin Action

There is no temporal overlap between the Wisconsin and New York actions and the factual theories are entirely distinct. The alleged class period in the Wisconsin Action runs from July 23, 2025 to October 29, 2025. ECF No. 1 ¶1. The theory of the Wisconsin Action is that in the wake

of disappointing results earlier in the year, the Company provided investors with false assurances that its financial projections were sound *as of July 2025* because the new CEO had recently engaged in a detailed "re-underwriting" of the Company's new initiatives and projects. *Id.* ¶¶2-4. In reality, the new CEO had not really engaged in a comprehensive re-underwriting and the Company's financial projections were, as the Company later admitted, based on "assumptions" that were "objectively difficult to achieve." *Id.* ¶3

The misstatements in the Wisconsin Action all occurred after the end of the class period in the New York Action and involved a totally different subject matter: Defendants' assurances regarding the Company's financial projections and the process undertaken by Company management to obtain comfort regarding those projections. *Id.* ¶¶47-57. Moreover, unlike in the New York Action, the Wisconsin Action does *not* rest on allegations regarding a long-running scheme to surreptitiously boost Clover performance through forced conversion of Payeezy clients. Rather, the Wisconsin Action alleges falsity based on the fact that the Company had not actually engaged in a comprehensive review of its business and the existence of problems in many parts of the Company's business that made its projections "objectively difficult" to achieve. *Id.* ¶58.

The truth was revealed on a single day, October 29, 2025, when the Company admitted it had not engaged in a comprehensive re-underwriting of its business and that its financial forecast was based on unreasonable assumptions including "including outsized business volume growth, record sales activity and broad-based productivity improvements, all of which would have been objectively difficult to achieve even with the right investment and strong execution." *Id.* ¶58. On this news, Fiserv's stock plummeted 44% in one day and another 7.6% the following day. *Id.* ¶¶59-60.

The parties are also different. Neither Frank J. Bisignano nor Kenneth F. Best are defendants

in the Wisconsin Action. Moreover, the putative class is completely distinct and numerous. The Wisconsin Action asserts claims on behalf of those who purchased Fiserv stock after Defendants' July 23, 2025 misstatements and before October 29, 2025. *Id.* ¶1. During this period, the daily average trading volume of Fiserv's stock was 6.44 million, reflecting the fact that thousands of class members bought millions of shares in reliance on the misstatements alleged herein. *See* Laughlin Decl. Ex. 3.[5]

## II.     PROCEDURAL BACKGROUND

On July 24, 2025, Hollywood filed its initial complaint in the Southern District of New York. As required by the PSLRA, Hollywood issued a notice informing putative class members of the action and the opportunity to move for lead plaintiff of that action by September 22, 2025. Laughlin Decl. Ex. 4. The notice defined the relevant class period as July 24, 2024 through July 22, 2025 and stated that only individuals and entities who purchased Fiserv stock during that period had an opportunity to move for lead plaintiff. *Id.* Furthermore, the notice to investors stated that the New York Action pertained to Fiserv's purported failure to disclose that it had artificially boosted Clover's performance through conversions from Payeezy. *Id.*

On September 22, 2025, the movant with the largest financial interest—the presumptive lead plaintiff under the PSLRA—was Ethenea Independent Investors, S.A. ("Ethenea"). *See* New York Action ECF No. 30. The movant with the second largest financial interest was a group of pension funds comprised of Hollywood and City Pension Fund for Firefighters and Police Officers

---

[5]     The high trading volume here is circumstantial evidence demonstrating the numerosity of the alleged class. *See, e.g.*, *In re Hartmarx Sec. Litig.*, 2002 WL 31103491, at *2 (N.D. Ill. Sept. 19, 2002) (numerosity satisfied where "stock traded over 5 million shares" during two-month class period); *Harman v. LyphoMed, Inc.*, 122 F.R.D. 522, 524 (N.D. Ill. 1988) (numerosity satisfied where "average weekly trading volume during the class period exceeded one million shares"); *In re Neopharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 565 (N.D. Ill. 2004) (where "stock trades on NASDAQ and more than 16 million shares are outstanding[,]" "[i]t can be reasonably inferred that hundreds, if not thousands, of persons would be included in the proposed class").

in the City of Miami Beach ("Miami Beach F&P," and together with Hollywood, the "Pension Funds"). New York Action ECF No. 25.

On October 6, 2025, the Pension Funds challenged the appointment of Ethenea, arguing that the fund was inadequate and atypical because it only bought shares of Fiserv after the first two of the three alleged disclosures in the case. New York Action ECF No. 39 at 1-2. According to the Pension Funds, the fraud had already largely been disclosed in the first two disclosures such that Ethenea was "undoubtedly on notice of Defendants' fraud when it made its only relevant purchase of Fiserv stock." *Id*. at 4; *see generally id.* at 4-9.

On October 29, 2025, Fiserv disclosed the true facts giving rise to this Wisconsin Action and the stock price plummeted. On November 4, 2025, Cypanga Sicav SIF ("Cypanga") filed the present action.

Three days later, on November 7, 2025, the Pension Funds dropped their opposition to the appointment of Ethenea and submitted a leadership stipulation whereby the Pension Funds and Ethenea would be appointed as co-lead plaintiffs. New York Action ECF No. 44. The stipulation makes no mention of this action filed by Cypanga. *Id.*

On November 14, 2025, before the Court in the New York Action had addressed their pending leadership stipulation, the Pension Funds and Ethenea made the present Motion.

Also on November 14, 2025, Plaintiff Sandra Lombard filed a second action against Fiserv in this Court. *See Lombard* Action ECF No. 1.

On November 17, 2025, the court in the New York Action entered the leadership stipulation. New York Action ECF No. 45.

On November 26, 2025, the Pension Funds and Ethenea made a motion similar to this one in the Lombard Action. *Lombard* Action ECF No. 4.

On December 1 and 2, 2025, counsel for Cypanga and Sandra Lombard ("Lombard") sought to reach an agreement for a coordinated omnibus briefing and schedule but counsel for the Pension Funds and Ethenea were not willing to provide mutually acceptable dates for such a schedule.

In the *Lombard* Action, the opposition brief is due on December 17, 2025 and the reply brief is due December 31, 2025.

## III.   ARGUMENT

### A.   Cypanga Does Not Oppose Permissive Intervention for the Limited Purpose of Making the Present Motion

Cypanga does not oppose the New York Plaintiffs' Motion for permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1) because there is no need for a sideshow on intervention. The New York Plaintiffs' substantive arguments regarding the PSLRA notice and transfer are meritless and should fail for that reason.

However, Cypanga notes that the New York Plaintiffs are certainly not entitled to intervention as a matter of right for several reasons. First, the New York Plaintiffs did not have a substantial interest in this matter when they filed this motion on November 14, 2025 because they were not lead plaintiffs in the New York Action; they were merely lead plaintiff movants who had dropped their reciprocal opposition to the appointment of the other and submitted a leadership stipulation to the court. The New York Plaintiffs have not cited to authority finding a substantial interest under these circumstances. On the contrary, in the principal decision they cite, the proposed intervenor was a court-appointed lead plaintiff and that was the basis for finding a substantial interest. *See* ECF No. 5 at 7-8 (relying on *Baker v. Cassava Scis., Inc.*, 2024 WL 3580627 (N.D. Ill. May 29, 2024)); *Baker*, 2024 WL 3580627, at *2 (observing that proposed intervenor had been appointed lead plaintiff after "extensive motion practice"), *5-7 ("Ultimately, [proposed intervenor] has an interest in this case because of his status as Lead Plaintiff in *Cassava I*").

More importantly, the New York Plaintiffs' arguments on the third and fourth factors under Fed. R. Civ. P. 24(a)(2) are premised entirely on their incorrect assertion that the Wisconsin Action is "wholly duplicative." ECF No. 5 at 7-9. As explained below, that assertion is wrong and, therefore, there is no basis for intervention as a matter of right.

### B. Because the Wisconsin Action Is Both Temporally and Factually Distinct, the Lead Plaintiff Deadline Should Not Be Vacated or Stricken

The main issue before the Court is the proposed intervenors' contention that the Wisconsin Action is wholly duplicative of the New York Action such that this Court should vacate the lead plaintiff deadline. ECF No. 5 at 9-11. The stakes are significant because the Wisconsin Action asserts claims on behalf of thousands of individuals and entities who collectively lost billions of dollars. ECF No. 1 ¶¶58-60; *see* Laughlin Decl. Ex. 3 (Bloomberg Data). The proposed intervenors are effectively arguing that these thousands of class members cannot pursue their claims independently and must rely on the judgment of the New York Plaintiffs as to how and whether the claims at issue in the Wisconsin Action should be prosecuted.

To prevail, the New York Plaintiffs need to show that the statutorily mandated PSLRA notice issued in the New York Action effectively notified the members of the putative class in the Wisconsin Action of the opportunity to move for lead plaintiff. The New York Plaintiffs cannot make this showing because the claims at issue in the Wisconsin Action are factually and temporally distinct from the claims covered in the New York Action's PSLRA notice. Accordingly, the notice was not effective as to the Wisconsin Action and the proposed intervenors' Motion must be denied.

#### 1. Legal Standard

A PSLRA notice is not binding on claims that it did not effectively notice. Thus, the proposed intervenors cannot simply subsume the claims in the Wisconsin Action into the New York Action. Indeed, courts regularly require new notice where changes to the contours of a securities action "make it likely that individuals who could now be considered potential lead plaintiffs would

have disregarded the earlier notice, and that allowing plaintiffs in this case to proceed without publishing a new notice reflecting their additional claims would potentially exclude qualified movants from the lead plaintiff selection process." *Kaplan v. S.A.C. Cap. Advisors L.P.*, 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013) (citation modified); *Teamsters Loc. 445 Freight Div. Pen. Fund v. Bombardier Inc.*, 2005 WL 1322721, at *3 (S.D.N.Y. Jun. 1, 2005) ("Although appointment is certainly easier-and thus more efficient-when there is only one movant, it is contrary to the spirit of the PSLRA to achieve that efficiency by failing to notify potential movants of their rights. Where membership of a class is substantially expanded by the filing of an amended complaint that adds new claims, fairness dictates that those new class members ought to be informed of the existence of pending claims that may affect their rights.").

The test for evaluating whether a PSLRA notice covers particular claims is straightforward and plainly cannot be satisfied here: claims that are temporally distinct and based on new factual theories are not covered. For example, in *Hachem v. General Electric Inc.*, 2018 WL 1779345, at *1-2 (S.D.N.Y. April 12, 2018), the court examined the effectiveness of a PSLRA notice in an existing securities case after a different plaintiff filed a new case. The *Hachem* court found that the first PSLRA notice was ineffective as to the new claims because those new claims covered an expanded time period and were based on a different factual theory. *Id.* Specifically, whereas the initial case contained claims regarding one segment of the company's business (GE Power), the second action contained claims regarding a different part of the company's business (GE LTC), as well as additional loss causation dates. *Id.* Other courts have made similar findings. *See In re Leapfrog Enters. Inc. Sec. Litig.*, 2005 WL 5327775, at *2-3 (N.D. Cal. July 5, 2005) (notice ineffective where new complaint expanded class period and added a new factual theory regarding the company's "distribution and supply chain"); *Kipling v. Flex Ltd.*, 2019 WL 1472358, at *1-2

(N.D. Cal. April 3, 2019) (notice ineffective where new action "focuses on an entirely different factual scenario and set of misrepresentations"); *In re Cloudera Inc., Sec. Litig.*, 2020 WL 1288362, at *3 (N.D. Cal. March 18, 2020) (notice of claims on behalf of secondary market purchasers did not cover newly asserted claims on behalf of individuals who received stock in merger).

### 2. The New York Action PSLRA Notice Does Not Cover the Distinct Claims Asserted in the Wisconsin Action

Here, the claims asserted in Wisconsin Action are temporally and factually distinct from the claims noticed by the New York PSLRA notice such that the New York notice does not apply to them. The New York PSLRA notice alerts only investors who purchased Fiserv stock between July 24, 2024 and July 22, 2025 of their right to participate in that action. Lauglin Decl. Ex. 4. Therefore, the members of the Wisconsin Action class—all of whom purchased their shares *after* July 22—had no reason to believe that their claims were at issue in the New York Action. Indeed, the Wisconsin Action class was not even harmed or aware of the alleged fraud affecting it until the Company's disclosures on October 29, 2025 and the subsequent stock drops. *See* ECF No. 1 ¶¶58-60.

The factual theory underpinning the Wisconsin Action is also different from the theory underpinning the New York Action. The New York Action asserts that Fiserv artificially boosted the performance of its Clover business by converting customers from its Payeezy platform, that this fraud was largely uncovered in the spring of 2025, and was "fully revealed" by July 22, 2025. New York Complaint ¶¶1-2, 55-73. By contrast, the Wisconsin Action involves a totally different set of misstatements, undisclosed facts, and disclosure dates. The Wisconsin Action alleges that Fiserv misleadingly reassured investors that its forecasts were accurate as of July 2025 because Company management had engaged in a comprehensive re-underwriting of its business and projects. ECF No. ¶¶2-4, 47-57. The Wisconsin Action also alleges two completely different disclosure dates

(October 29 and October 30, 2025).  *Id.* ¶¶59-60.  Under these circumstances, the New York PSLRA notice does not apply.

The New York Plaintiffs' arguments to the contrary all fail.  As a preliminary matter, the New York Plaintiffs do not appear to dispute that, to the extent the Wisconsin Action claims are factually distinct, they would not be covered by the New York PSLRA notice.  Indeed, the New York Plaintiffs cite to authority where a notice was found to apply to new claims because the new claims were substantially identical to claims covered in the notice.  ECF No. 5 at 9-10 (citing *Turner v. ShengdaTech, Inc*., 2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011); *Shengda*, 2011 WL 6110438, at *3 (finding notice effective because new complaint "relies on the same legal theories as that action" as the complaint that was noticed).

Instead, the New York Plaintiffs argue that the Wisconsin Action is essentially identical because the October 29, 2025 drop is a "clear continuation of the revelations alleged" in the New York Action.  ECF No. 5 at 9.  But that argument is not supported by evidence and is entirely inconsistent with the allegations of the New York Complaint.  According to their own complaint, the Payeezy-Clover fraud was "fully revealed" on July 22, 2025.  New York Complaint ¶70.  Obviously, if the problems with Clover were fully known as of July 22, 2025, then there can be no "continuation" of the problem.  Moreover, the re-underwriting statements that form the basis of the Wisconsin Action occurred after July 22, 2025 and pertained to the Company as a whole, of which Clover is only a small part.  ECF No. 1 ¶¶47-57.  And the fact that Fiserv did not perform the re-underwriting as indicated is not a "continuation" of the Clover scheme; rather, it is a new factual theory akin to what was alleged in *Hachem*, *Leapfrog*, and *Flex*.

In addition, the hostility expressed by the Pension Funds to the claims of those who purchased later in the existing New York Action class period is a second reason why the Wisconsin

Action cannot be subsumed by the New York Action. Before they abandoned the argument and submitted a leadership stipulation, the Pension Funds argued vociferously that anyone who purchased Fiserv shares solely between May 15, 2025 and July 22, 2025 was likely "on notice" of the Clover fraud. New York Action ECF No. 39 at 6-8. That observation applies with even greater force to the members of the Wisconsin Action class, all of whom purchased shares after July 22, 2025. The members of the Wisconsin Action class should not be saddled with leadership that is hostile to their claims. *Borenstein v. Finova Grp. Inc.*, 2000 WL 34524743, at *8 (D. Ariz. Aug. 30, 2000) (declining to appoint movant who purchased only stock because it had "openly questioned whether the note holders will be able to recover anything").

### C. The Proposed Intervenors Have Not Carried Their Burden to Justify Transfer to the Southern District of New York

The New York Plaintiffs also ask this Court to transfer this action under 28 U.S.C. §1404(a) to the U.S. District Court for the Southern District of New York, where their case is pending. ECF No. 5 at 11-14. But this request is based on the mistaken notion that the claims in this Action allege the same (or substantially similar) fraud as in the New York Action. When stripped of this fundamental defect, the New York Plaintiffs' arguments do not come close to carrying their "burden of showing that the transferee forum is clearly more convenient." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (citation modified).

#### 1. The Transfer Motion Rests Almost Entirely on the Incorrect Notion that the Wisconsin and New York Actions Are Identical

The New York Plaintiffs' arguments based on the supposedly identical nature of the New York and Wisconsin Action fail because, as set forth above, these actions are substantially different.

First, the New York Plaintiffs argue that transfer would "promote judicial efficiency." ECF No. 5 at 12. But that argument is explicitly predicated on the incorrect assertion that "the facts and

legal theories giving rise to the claims in both actions are the same." *Id.* at 12. That is not the case and thus there is no basis to the New York Plaintiffs' speculation that "[a]llowing both actions to proceed separately would risk inconsistent rulings, duplicative discovery, and needless expenditure of judicial resources." *Id.* at 12.

Second, the New York Plaintiffs invoke the so-called "first-to-file" rule to urge transfer. *Id.* at 13-14. However, the "first-to-file" rule does not apply because the Wisconsin Action is substantially different from the New York Action. Indeed, the New York Plaintiffs' authorities are inapt because they addressed transfer where, unlike here, the first-filed action was identical (or substantially identical) to the second action. Thus, these cases are irrelevant. *See Ballotti v. Oppenheimer Funds, Inc.*, 2011 WL 13382871, at *5 (N.D. Ill. Feb. 23, 2011) ("claims made in all the actions are substantially similar" and "hinge upon the same misrepresentations . . . and improper actions"); *Villalobos v. Cooper Tire & Rubber Co.*, 2005 WL 8179132, at *2 (N.D. Ill. Oct. 25, 2005) (first-filed action brought by "other passengers of the same automobile as plaintiffs who suffered injuries in the same accident" who also "allege that the accident resulted from defective tires manufactured by" defendant); *Cooper v. Aames Funding Corp.*, 2006 WL 8446409, at *2 (E.D. Wis. Mar. 31, 2006) (undisputed that the two actions "involve[d] common questions of law and fact" and that the earlier-filed action "encompasses the putative class" in the second action); *Aliano v. Quaker Oats Co.*, 2017 WL 56638, at *3 (N.D. Ill. Jan. 4, 2017) ("cases that involve the same defendant, seek the same remedy, and deal with substantially similar factual and legal issues"); *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 245 (E.D.N.Y. 2012) ("all three actions involve FLSA claims for unpaid wages and overtime compensation against MetLife . . . . premised upon similar allegations"); *Barrington Grp., Ltd. v. Genesys Software Sys., Inc.*, 239 F. Supp. 2d 870, 872 (E.D. Wis. 2003) (two actions at issue were "'mirror image' actions, i.e., they

are duplicative of one another"); *Vanguard Prods. Grp., Inc. v. Protex Int'l Corp.*, 2006 WL 695700, at *2 (N.D. Ill. Mar. 14, 2006) (mirror-image patent actions).[6]

### 2. Transfer Is Clearly Inappropriate Under Seventh Circuit Law

When the New York Plaintiffs' mischaracterization of this Action as identical to their action is set aside, they have failed to carry their burden to show that the Section 1404(a) factors "clearly" warrant transfer. A district court may transfer a civil action to another district, where it otherwise could have been brought, "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. §1404(a). "The authority to transfer is placed within the discretion of the district court, though it is to be exercised in light of 'individualized, case-by-case consideration[s] of convenience and fairness.'" *United States v. AseraCare, Inc.*, 2012 WL 187519, at *1 (E.D. Wis. Jan. 23, 2012) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "Courts evaluating whether to transfer an action pursuant to Section 1404(a) consider the private interests of the parties as well as the public interest." *Abdou v. Mahany*, 2019 WL 764742, at *2 (E.D. Wis. Feb. 21, 2019). Here, both the public and private factors weigh decisively against transfer.

The Private Interest Factors Counsel Against Transfer. "Private interest factors include the parties' ease of access to evidence, the availability of witnesses, and various other administrative and logistical details involved in litigation." *Id.* The New York Action Plaintiffs do not attempt to carry their burden to explain how these factors clearly favor transfer to the Southern District of New York. "In a securities fraud case, the material events are the creation and dissemination of the allegedly false statements in the complaint." *Coll. Ret. Equities Fund v. Boeing Co.*, 2025 WL

---

[6]    Even if the rule did apply, the Seventh Circuit has "repeatedly taught that [it] does not rigidly adhere to a first-to-file rule." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010). Rather, the Seventh Circuit has held that "where a district court faces one of two identical lawsuits and one party moves to transfer to the other forum, the court should do no more than consider the order in which the suits were filed among the factors it evaluates under 28 U.S.C. § 1404(a)." *Id.* at 982.

1207313, at *3 (N.D. Ill. Apr. 25, 2025) (citation modified); *see, e.g.*, *Paul v. Lands' End, Inc*., 742 F. Supp. 512, 514 (N.D. Ill. 1990) ("misrepresentations . . . contained in press releases and other documents . . . emanated from Wisconsin, the corporate headquarters of Lands' End. Plaintiffs' [securities fraud] cause of action essentially stems from corporate policy and decisions made at the headquarters of Lands' End."). Fiserv is a Wisconsin corporation whose headquarters and principal executive offices are in Milwaukee. Laughlin Decl. Ex. 1. The Company's SEC filings each bear a Milwaukee address. *Id*. Accordingly, the events underlying this Action likely largely occurred in this District and the relevant documents and witnesses are all likely located in this District. Nor do the New York Action Plaintiffs argue otherwise. *See, e.g.*, *Coll. Ret. Equities Fund*, 2025 WL 1207313, at *3 ("party seeking transfer, bear[s] the burden to specify the key witnesses to be called and describe their testimony"). Having failed to do so in their opening brief, they should be precluded from proffering any such evidence on reply. *See, e.g.*, *Saddy v. Agnesian Health Care*, 2017 WL 570787, at *5 (E.D. Wis. Feb. 13, 2017) (party "may not marshal arguments and evidence for the first time in their reply when they were available and relevant to the issues in their opening brief"); *TAS Distrib. Co. v. Cummins Engine Co.,* 491 F.3d 625, 630-31 (7th Cir. 2007) ("well-settled that arguments first made in the reply brief are waived").

       The Public Interest Factors Counsel Against Transfer. "Public interest factors include the local interest of the controversy . . . and the relative fairness of burdening citizens in an unrelated forum with jury duty." *Abdou*, 2019 WL 764742, at *2 (citation modified). This Action involves securities fraud claims against a Wisconsin corporation headquartered in Milwaukee and this District has a far greater interest than the Southern District of New York in addressing these claims. *See, e.g.*, *Bowen v. Groome*, 2011 WL 13099036, at *1 (S.D. Ill. May 3, 2011) ("[D]efendant's home forum always has a strong interest in providing a forum for redress of injuries caused by its

citizens.") (citation modified).[7]

**CONCLUSION**

For the foregoing reasons, the Court should deny the proposed intervenors' motion in full except to the extent they seek permissive intervention pursuant to Fed. R. Civ. P. 24(b).

DATED: December 5, 2025        **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*/s/* Thomas L. Laughlin, IV
Thomas L. Laughlin, IV
Mandeep S. Minhas (admission motion forthcoming)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
tlaughlin@scott-scott.com
mminhas@scott-scott.com

Amanda F. Lawrence
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 531-2645
alawrence@scott-scott.com

*Counsel for Plaintiff and the Putative Class*

---

[7]     The fact that Fiserv's stock trades on the New York Stock Exchange ("NYSE") does not alter the analysis. "[T]he locus of operative facts is not shifted to New York merely because [Fiserv] stock was traded on the" NYSE. *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, 2015 WL 12659925, at *6 (S.D.N.Y. Apr. 30, 2015); *see, e.g.*, *SEC v. Brda*, 2024 WL 4817475, at *5 (S.D.N.Y. Nov. 18, 2024) ("courts routinely find that a NASDAQ listing is insufficient to avoid transfer" out of the Southern District of New York).