# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CYPANGA SICAV SIF, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>     vs.<br><br>FISERV, INC., MICHAEL P. LYONS, and ROBERT W. HAU,<br><br>                Defendants. | Civil Action No. 2:25-cv-01716-JPS<br><br>CLASS ACTION<br><br>REPLY MEMORANDUM IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION TO INTERVENE IN ORDER TO TRANSFER CASE AND VACATE LEAD PLAINTIFF DEADLINE |

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ....................................................................................................1

II. ARGUMENT..........................................................................................................3

    A.  This Follow-On Stub Period Action Is Part of the Same Alleged Fraud and Claims Already at Issue in the First-Filed Action ....................................................3

    B.  Minor Temporal and Party Differences Do Not Defeat Intervention or Transfer Under Rule 24 and Section 1404(a) ..........................................................8

II. CONCLUSION.....................................................................................................12

Case 2:25-cv-01716-JPS     Filed 12/19/25     Page 2 of 17     Document 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baker v. Cassava Scis., Inc.*,
2024 WL 3580627 (N.D. Ill. May 29, 2024) ................................................................ 8, 9

*Ballotti v. Oppenheimer Funds, Inc.*,
2011 WL 13382871 (N.D. Ill. Feb. 23, 2011) ................................................................ 11

*Bogard v. TikTok Inc.*,
725 F. Supp. 3d 897 (S.D. Ind. 2024) ........................................................................... 11

*Chun v. Fluor Corp.*,
2020 WL 2745527 (N.D. Tex. May 26, 2020) ............................................................... 10

*Gilsinger v. Cities & Villages Mut. Ins. Co.*,
2022 WL 280902 (E.D. Wis. Jan. 31, 2022) ................................................................... 9

*Hachem v. Gen. Elec. Inc.*,
2018 WL 1779345 (S.D.N.Y. Apr. 12, 2018) ............................................................... 6, 7

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010) .................................................................... 9

*In re CenturyLink Sales Practices & Sec. Litig.*,
2018 WL 1902725 (D. Minn. Apr. 20, 2018) .................................................................. 6

*In re Cloudera Inc., Sec. Litig.*,
2020 WL 1288362 (N.D. Cal. Mar. 18, 2020) ............................................................. 6, 7

*In re Leapfrog Enters. Inc. Sec. Litig.*,
2005 WL 5327775 (N.D. Cal. July 5, 2005) ................................................................ 6, 7

*In re St. Paul Travelers Sec. Litig. II*,
2007 WL 1589524 (D. Minn. June 1, 2007) .................................................................... 8

*Kaplan v. S.A.C. Capital. Advisors, L.P.*,
947 F. Supp. 2d 366 (S.D.N.Y. 2013) ............................................................................. 7

*Kipling v. Flex Ltd.*,
2019 WL 1472358 (N.D. Cal. Apr. 3, 2019) ................................................................... 7

*Lax v. First Merchants Acceptance Corp.*,
1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ............................................................ 2, 5, 6

*Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.*,
2017 WL 3780164 (E.D. Tex. Aug. 31, 2017) ................................................................ 5

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
2020 WL 1181366 (D. Conn. Mar. 10, 2020) ............................................................ 5, 10

*Porter v. Graftech Int'l Ltd.*,
2024 WL 2189642 (N.D. Ohio May 15, 2024) ................................................................ 6

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*,
    2005 WL 1322721 (S.D.N.Y. June 1, 2005) ........................................................................ 7

*Turner v. ShengdaTech, Inc.*,
    2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011) ........................................................................ 5

*Vanguard Prods. Grp., Inc. v. Protex Int'l Corp.*,
    2006 WL 695700 (N.D. Ill. Mar. 14, 2006) ..................................................................... 11

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*,
    899 F. Supp. 2d 235 (E.D.N.Y. 2012) ............................................................................. 11

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(A)(ii), (B)(ii) ..................................................................................... 2, 6

28 U.S.C. § 1404(a) ...................................................................................................................... 1

## I. INTRODUCTION

Lead Plaintiff should prevail on this motion. This follow-on case asserts the same Exchange Act and Rule 10b-5 claims, arising from the same course of conduct and against essentially the same defendants, as the first-filed Fiserv securities class action pending in the Southern District of New York (the "First-Filed Action"). Under the PSLRA and 28 U.S.C. § 1404(a), this action should be transferred there and the January 5, 2026 lead-plaintiff deadline vacated.[1] Importantly, no defendant opposes this motion; the only party resisting the relief sought is Cypanga.[2]

Cypanga's opposition narrows the dispute to two points. It contends that this Follow-On Action challenges a different fraud, centered on alleged July 2025 "re-underwriting" statements and the October 29, 2025 disclosure, so stub-period purchasers supposedly fall outside the First-Filed Action and its PSLRA notice. It also argues that the absence of temporal overlap between the pleaded class periods and modest differences in parties defeat intervention and transfer. Each contention is wrong.

By Cypanga's own allegations, the October 29, 2025 disclosure and stub period is a continuation of the same problems with Fiserv's growth metrics already at issue in the First-Filed Action. However, Lead Plaintiff is proceeding under a court-approved schedule to amend the complaint in that court in order to expand the class period to encompass this information.

---

[1] Unless otherwise indicated, all defined terms are the same as in the Lead Plaintiff's initial motion and brief in support (ECF Nos. 4-5); all ECF references are to the docket in this Follow-On Action; and all emphasis is added and internal quotation marks and citations are omitted.

[2] Another follow-on action, captioned *Lombard v. Fiserv, Inc.*, No. 2:25-cv-01786 (E.D. Wis.), was filed several days after this action and has been marked as related by Defendants. Lead Plaintiff filed a similar motion to intervene and transfer in that action, Lombard filed a similar opposition to Cypanga, and Lead Plaintiff will file a reply in further support of that motion on or before December 31, 2025.

Defendants are aware of this proposed amendment and have no objection. Moreover, as the court-appointed lead plaintiff in the First-Filed Action, Lead Plaintiff has a direct, legally protected interest in avoiding duplicative litigation that risks inconsistent rulings and satisfies Rule 24.[3]

Indeed, courts applying the PSLRA have long recognized that its notice and lead-plaintiff framework turns on claims, not the precise start and end dates of class periods. For example, *Lax v. First Merchants Acceptance Corp.* held that later complaints may allege different class periods yet still involve "substantially the same claims," and that where that is so, a second PSLRA notice is not required. 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997). Thus, the lead plaintiff appointment in the First-Filed Action extends to substantially the same claims asserted in this stub-period case, including investors who purchased after July 22, 2025, the last day in the class period in the original complaint in the First-Filed Action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii), (B)(ii). The January 6, 2026 lead plaintiff deadline is therefore duplicative, unnecessary, and should be stricken. Moreover, where overlapping securities class actions involve the same claims and securities, the first-filed rule and § 1404(a)'s convenience and interest-of-justice factors favor transfer to the court already managing the primary litigation and leaving the PSLRA leadership structure intact.

Accordingly, the Court should grant Lead Plaintiff's motion, permit intervention, strike the January 5, 2026 lead-plaintiff deadline in this follow-on case, and transfer this action to the Southern District of New York for consolidation with the First-Filed Action.

---

[3] To the extent Cypanga suggests that interest was lacking when the motion was filed because the leadership stipulation had not yet been entered, that objection fails. First, Hollywood (one of the three court-appointed Lead Plaintiffs in the First-Filed Action) filed the First-Filed Action and has standing on that independent basis. Second, the Lead Plaintiff has since been appointed in the First-Filed Action. Moreover, Rule 24 looks to the practical interests at stake when the Court rules, and those interests plainly exist both when the motion was filed and today.

## II. ARGUMENT

### A. This Follow-On Stub Period Action Is Part of the Same Alleged Fraud and Claims Already at Issue in the First-Filed Action

Cypanga concedes that the First-Filed Action can "subsume this case if the [PSLRA] notice issued in the New York Action can fairly be read to apply to the claims at issue in this case." ECF No. 18 at 2. As explained below, it does.

Read together, the two complaints and Fiserv's own disclosures plainly describe a single, continuous course of conduct and the same Exchange Act and Rule 10b-5 causes of action, premised on the same basic theory that Fiserv misrepresented its growth metrics and guidance while growth deteriorated. *See* First-Filed Action ECF No. 1 ¶¶ 1-10, 55, 61, 70, 89-95; ECF No. 1 ¶¶ 2-4, 20-33, 79-93.[4]

Cypanga's effort to re-cast the First-Filed Action as a "Clover-only" case and this action as a "re-underwriting-only" case is hollow. The complaint in the First-Filed Action alleges that Fiserv misled investors about its organic growth rate and business momentum, using Clover migration as the mechanism for temporarily inflating those growth metrics, and that the truth began to emerge as the Company lowered its growth guidance in 2025. First-Filed Action ECF No. 1 ¶¶ 2, 8, 55, 61, 70. The Follow-On Action in turn challenges the same growth metrics and guidance, alleging that the July 23, 2025 guidance revision and the October 29, 2025 disclosure show those metrics were still overstated because the initial "re-underwriting" was incomplete. ECF No. 1 ¶¶ 2-4, 30-40, 58. Both complaints therefore involve the same course of conduct: company-wide

---

[4] The fact that the First-Filed Action alleges the truth was fully revealed on July 22, 2025 does not alter the analysis. Obviously, the October 29, 2025 corrective disclosure alleged in the Follow-On Action had not yet occurred when the First-Filed Action was initiated three months earlier on July 24, 2025.

misstatements about Fiserv's organic growth and projections, not two unrelated frauds in different corners of the business.

Indeed, the Follow-On Action treats the October 29, 2025 disclosure as the next chapter in the same story, not as a new and unrelated fraud. It alleges that disclosure consisted of yet another downward revision to Fiserv's organic growth guidance and pleads that Fiserv's July 23, 2025 conference call and guidance cut, which ended the current class period in the First-Filed Action, were the starting point for the "re-underwriting" that led to the October announcement. ECF No. 1 ¶¶ 30-40, 58; First-Filed Action ECF No. 1 ¶¶ 8, 55, 70. The Follow-On Action quotes Lyons explaining that in July, Fiserv "revised down" elevated expectations and then conducted a "broader and deeper full company analysis in Q3," and it alleges that the October disclosure was required because the earlier re-underwriting was "incomplete." ECF No. 1 ¶¶ 36, 58. It further alleges that the four factors Fiserv identified as driving the October revision, including deferred investments and the reliance on short-term initiatives, had been in place "over the last few years" and at least six months before October 2025. *Id*. ¶¶ 34, 37-40. Those months obviously fall inside the First-Filed Action's class period. First-Filed Action ECF No. 1 ¶ 55.

Cypanga's insistence that there is "no temporal overlap" simply reflects a strategic drafting choice, not a break in the alleged misconduct. The class period in the Follow-On Action begins one day after the First-Filed Action's current class period ends, even though Cypanga's complaint alleges that the conditions driving the October 29 disclosure "stemmed from conduct going back at least six months" and that the July 23, 2025 revision and the October 29, 2025 disclosure are part of the same re-underwriting process. ECF No. 1 ¶ 40. Lead Plaintiff has already advised both Defendants and Cypanga that it will amend in the First-Filed Action to extend the class period to include this same stub period, and the Southern District of New York has entered a schedule for

that amendment. First-Filed Action ECF No. 48; ECF No. 18 at 2. Once that occurs, the two actions will not just involve the same claims and course of conduct; they will literally share the same class period.

Under the PSLRA, what matters for notice and lead-plaintiff appointment is the claims, not how a later complaint slices the dates. Section 78u-4(a)(3)(A)(ii) provides that when "more than one action on behalf of a class asserting substantially the same claim or claims" is filed, only the plaintiff in the first-filed action is required to publish notice. Courts have long applied that language to hold that later complaints that assert the same Exchange Act claims on the same securities, even with different or extended class periods, remain under the aegis of the first notice and do not trigger the need for a new sixty-day lead plaintiff window. *See, e.g.*, *Lax*, 1997 WL 461036, at *4 ("requiring published notices for complaints that merely expand the class period to inform class members that they may move to be appointed lead counsel within sixty days of the *date of that published notice* would be inconsistent with the purposes of the PSLRA" (emphasis in original)); *Turner v. ShengdaTech, Inc.*, 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011) ("Courts, however, disfavor republication of notice under PSLRA when a class period is extended beyond the period contained in the first-filed securities class action"); *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 2020 WL 1181366, at *8-10 (D. Conn. Mar. 10, 2020) (finding republication of notice not appropriate because "the conduct alleged in the *St. Petersburg* complaint is a clear continuation of the conduct alleged in the FAC in this action"); *Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.*, 2017 WL 3780164, at *3 (E.D. Tex. Aug. 31, 2017) ("issuing a new notice after each new complaint or amendment could cause 'appointment of lead counsel [to] be delayed indefinitely . . . [, and s]uch result would clearly thwart the intent of the PSLRA." (alterations and ellipses in original)).

This case fits squarely within that rule. Both actions involve the same Fiserv common stock, the same Exchange Act and Rule 10b-5 causes of action, and an alleged course of conduct in which Fiserv and its senior executives misrepresented growth metrics and guidance while growth slowed. The Follow-On Action pleads the October 29, 2025 disclosure as a further correction of the July 2025 guidance revision and of longer-running issues with deferred investments, short-term initiatives, and overly optimistic growth assumptions. ECF No. 1 ¶¶ 30-40, 58. Lead Plaintiff in the First-Filed Action is already proceeding under a court-approved schedule to add that disclosure and stub period to its operative complaint. First-Filed Action ECF No. 48. In practical terms, the PSLRA lead-plaintiff appointment in the First-Filed Action therefore extends to these stub-period claims, and the statute does not allow Cypanga to restart the lead-plaintiff process by carving out a short consecutive period and publishing a second notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii), (B)(ii); *Lax*, 1997 WL 461036, at *4; *In re CenturyLink Sales Practices & Sec. Litig.*, 2018 WL 1902725, at *5 (D. Minn. Apr. 20, 2018) ("Because no new notice was required, the deadline to file a request to be Lead Plaintiff expired August 21, 2017, and IMG's motion is time-barred"); *Porter v. Graftech Int'l Ltd.*, 2024 WL 2189642, at *7-8 (N.D. Ohio May 15, 2024) (noting that all motions for appointment as lead plaintiff must be filed within 60 days of the filing of the notice in the first-filed action).

Cypanga's "different fraud" cases do not say otherwise. In decisions such as *Hachem*, *Leapfrog*, *Flex*, *Bombardier*, and *Cloudera*, the later complaints expanded the class periods, often by years, **and introduced new factual theories** involving one or more of different business segments, different types of securities, or new categories of investors, so courts required fresh notice to avoid excluding newly affected investors from the PSLRA process. Indeed, in *Kaplan v. S.A.C. Capital. Advisors, L.P.*, which Cypanga cites in support, the court recognized that

"alteration of the class period, without more, does not require republication," and held that republication was required only because "the consolidated class action complaint add[ed] more than two years . . . to the original class period" and, "more significantly, the consolidated class action complaint assert[ed] new claims." 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013). Similarly, in *Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*, the court recognized that "[c]ourts have generally disfavored republication of notice when a complaint is amended, even where the amendment alters the class period," but required republication because "[a] class member who owned only Series 1998-C securities, encountering a notice regarding only the Series 2000-A securities, would have no idea that she had the opportunity to move for appointment as lead plaintiff." 2005 WL 1322721, at *1-2 (S.D.N.Y. June 1, 2005).[5] Unlike these cases, no new factual theory or class of securities is alleged.

Because the Follow-On Action's stub-period complaint is a continuation of the same fraud and claims already being litigated in the First-Filed Action, courts interpreting the PSLRA have

---

[5] Cypanga's other cases are equally distinguishable. *See Hachem v. Gen. Elec. Inc.*, 2018 WL 1779345, at *2 (S.D.N.Y. Apr. 12, 2018) (requiring republication where "[t]he initial notice listed a class period of only three months – between July 21, 2017, and October 20, 2017 – and cited only the underperformance of GE's Power segment in describing the putative class claims" and the amended complaint "cover[ed] a class period of almost five *years* and include[d], in addition to claims regarding General Electric's Power segment, substantial allegations concerning GE's LTC business" (emphasis in original)); *In re Leapfrog Enters. Inc. Sec. Litig.*, 2005 WL 5327775, at *3 (N.D. Cal. July 5, 2005) (noting that an amended complaint more than doubled the relevant class period and added allegations regarding a completely new topic); *Kipling v. Flex Ltd.*, 2019 WL 1472358, at *2 (N.D. Cal. Apr. 3, 2019) (noting that an amended complaint focused on "Flex's misrepresentations about the strength of its partnership with key customer Nike," while the original complaint "never mentioned Nike at all" and included as part of the class purchasers of securities which were excluded from the original complaint); *In re Cloudera Inc., Sec. Litig.*, 2020 WL 1288362, at *3 (N.D. Cal. Mar. 18, 2020) (noting that an amended complaint "add[s] Securities Act claims to the existing Exchange Act claims" and "substantially alter[ed] the class definitions").

held that it does not permit a second lead-plaintiff contest in these circumstances. *See Baker v. Cassava Scis., Inc.*, 2024 WL 3580627, at *6 (N.D. Ill. May 29, 2024) ("[C]ourts tend to agree that it is within the Lead Plaintiff's power to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to assert on behalf of the class."); *In re St. Paul Travelers Sec. Litig. II*, 2007 WL 1589524, at *6 (D. Minn. June 1, 2007) ("The primary difference with the Amended Complaint is temporal rather than substantive because lead plaintiff simply seeks to expand the class period.").

**B.      Minor Temporal and Party Differences Do Not Defeat Intervention or Transfer Under Rule 24 and Section 1404(a)**

Once the stub-period claims in this case are recognized as part of the same Fiserv growth-metrics fraud and Exchange Act claims already at issue in the First-Filed Action, Cypanga's remaining objections under Rule 24 and § 1404(a) fall away. Its opposition leans on two points: that the alleged class periods do not technically overlap and that the set of defendants is not identical. *See* ECF No. 18 at 2, 5. Those drafting choices do not deprive Lead Plaintiff of a direct, legally protectable interest in this case or outweigh the strong interest in having one court and one lead plaintiff oversee all Exchange Act and Rule 10b-5 claims arising from this continuous course of conduct.

As the court-appointed lead plaintiff in the First-Filed Action, Lead Plaintiff plainly satisfies Rule 24's interest requirement. The PSLRA appoints a lead plaintiff to control the management of the litigation as a whole and to decide what claims and class period to assert on behalf of the class, including whether to extend the class period to capture later disclosures that are part of the same alleged fraud. Courts have recognized that this role confers a direct, significant, legally protectable interest in related actions that threaten to splinter those same claims. *See, e.g.*, *Cassava*, 2024 WL 3580627, at *5-7; *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,

2010 WL 1438980, at \*2 (S.D.N.Y. Apr. 9, 2010); *Gilsinger v. Cities & Villages Mut. Ins. Co.*, 2022 WL 280902, at \*6 (E.D. Wis. Jan. 31, 2022). Lead Plaintiff here has already been appointed in the First-Filed Action, is proceeding under a court-approved schedule to amend there to include the stub period alleged in this case, and will represent investors who purchased throughout both periods in the same Fiserv common stock. First-Filed Action ECF Nos. 45, 48; ECF No. 5 at 7-8. That is more than sufficient to meet Rule 24(a)(2)'s interest requirement.

The remaining Rule 24 elements are also satisfied. If this case proceeds separately, Lead Plaintiff's ability to protect its interests and those of the class will be impaired in practical and predictable ways. Both this Court and the Southern District of New York would be asked to decide the sufficiency of allegations regarding the same July 23 and October 29, 2025 statements, and to address scienter, loss causation, and damages arising from the same corrective disclosure and price decline. ECF No. 1 ¶¶ 30-40, 58-60; First-Filed Action ECF No. 1 ¶¶ 55, 61, 70. That structure invites inconsistent rulings and duplicative discovery, and it threatens to divide the finite insurance and corporate resources available to satisfy any settlement or judgment. *Cassava* recognized exactly these concerns in holding that a PSLRA lead plaintiff in a first-filed securities case had a right to intervene in a follow-on action built on the same fraud. 2024 WL 3580627, at \*6-7. Lead Plaintiff also has far greater losses and a far more advanced litigation posture than Cypanga, which underscore that Cypanga does not adequately represent Lead Plaintiff's interests or those of the broader Fiserv investor class. *See* ECF No. 5 at 7-9; ECF No. 18 at 9. At a minimum, the substantial overlap of claims and issues easily justifies permissive intervention under Rule 24(b), which Cypanga does not oppose.[6]

---

[6]     Cypanga contends that because the Pension Funds argued ETHENEA's May-July 2025 purchases made it atypical, Lead Plaintiff is "hostile" to later purchasers and unsuitable to represent the stub class. ECF No. 18 at 13. Cypanga's reliance on the Pension Funds' earlier

Cypanga's focus on the absence of temporal overlap and modest differences in parties does not change that analysis. The lack of overlap is a pleading choice, not a substantive break in the alleged misconduct: the Follow-On Action itself alleges that the drivers of the October 29, 2025, disclosure were in place for at least six months before that date, squarely inside the class period in the First-Filed Action. ECF No. 1 ¶¶ 34, 37-40, 58; First-Filed Action ECF No. 1 ¶ 55. Courts facing follow-on securities actions with consecutive or extended class periods and the same securities and theory of fraud routinely treat them as part of a single course of conduct and consolidate them under the original lead plaintiff rather than splintering leadership. *See, e.g.*, *Ontario Teachers' Pension Plan Bd.*, 2020 WL 1181366, at *8-10; *Chun v. Fluor Corp.*, 2020 WL 2745527, at *4-5 (N.D. Tex. May 26, 2020).

For similar reasons, Section 1404(a) and the first-filed rule point toward transfer once the continuity of the claims is acknowledged. This Follow-On Action plainly could have been brought in the Southern District of New York where the First-Filed Action is pending, where Defendants disseminated many of the challenged statements, and where one of the two Individual Defendants Cypanga has named resides. First-Filed Action ECF No. 1 ¶ 15; ECF No. 5 at 11-12. Cypanga does not dispute any of this, and, importantly, Defendants do not oppose transfer.

In modern securities litigation, the location of documents is largely neutral because discovery is electronic, and key witnesses can be deposed in Wisconsin or elsewhere regardless of

---

briefing in the First-Filed Action is misplaced. Those arguments concerned adequacy among competing lead plaintiff movants based on their trading patterns within the then-pleaded class period; they do not suggest that Lead Plaintiff will discount or abandon claims for investors who purchased later in the extended period, as evidenced by Lead Plaintiff's commitment to amend in New York to include the stub-period disclosures and losses. In any event, the Pension Funds and ETHENEA have shown a commitment to protect class members by agreeing to work together to advance all class members' claims. Cypanga, by contrast, has impaired the class's interests by distracting Lead Plaintiff's counsel from their investigation and drafting of the amended complaint by opposing the pending motion.

the forum. *See Bogard v. TikTok Inc.*, 725 F. Supp. 3d 897, 909 (S.D. Ind. 2024) ("Where most of the material evidence is 'documentary or electronic in nature . . . courts frequently consider this factor to be neutral in the decision to transfer.'"). What does matter under Section 1404(a)'s interest-of-justice prong is the risk of duplicative litigation and inconsistent rulings. *See Ballotti v. Oppenheimer Funds, Inc.*, 2011 WL 13382871, at *6 (N.D. Ill. Feb. 23, 2011). Here, allowing this stub case to proceed in parallel would force two courts to manage overlapping securities class actions against the same corporate defendant on the same theory of fraud, with overlapping witnesses and evidence. Transferring this case for consolidation with the First-Filed Action avoids that result and promotes the "conservation of judicial resources and comprehensive disposition of litigation" that animates both Section 1404(a) and the first-filed rule. *See Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012) ("Proper application of the 'first-filed' rule requires that the first and subsequently filed case(s) have either identical or substantially similar parties and claims. . . . Importantly, application of the rule does not require *identical* parties in the cases, but merely requires 'substantial overlap.'" (emphasis in original)); *Vanguard Prods. Grp., Inc. v. Protex Int'l Corp.*, 2006 WL 695700, at *5 (N.D. Ill. Mar. 14, 2006) ("deference must be given to the New York forum-the preferred forum of the first-filed plaintiff.").

Taken together, the modest temporal and party differences Cypanga identifies do not overcome Lead Plaintiff's concrete interest in this case, the practical impairment that competing litigation would cause, or the strong interest of justice in litigating all Fiserv growth-metrics claims in the already pending First-Filed Action. Intervention is warranted, and the same considerations that justify intervention also support transfer to the Southern District of New York for consolidation.

## II. CONCLUSION

Recognizing the stub-period allegations in this case as part of the same Fiserv growth-metrics fraud already at issue in the First-Filed Action gives effect to the PSLRA's single-notice regime and prevents a second, conflicting lead-plaintiff contest over the same Exchange Act and Rule 10b-5 claims. As the court-appointed Lead Plaintiff in the First-Filed Action, Lead Plaintiff is in the best position to pursue all related claims in one forum, whereas allowing this case to proceed separately would only result in duplicate discovery, risk inconsistent rulings on the same July and October 2025 statements, and weaken any eventual recovery for Fiserv investors. No defendant has opposed the relief Lead Plaintiff seeks, and Cypanga itself does not object to permissive intervention for the limited purpose of presenting this motion.

The Court should therefore grant intervention, vacate the January 5, 2026 lead plaintiff deadline in this follow-on case, and transfer it to the Southern District of New York for consolidation with the First-Filed Action.

DATED: December 19, 2025

Respectfully submitted,

*/s/ James B. Barton*
**BARTON CERJAK S.C.**
313 North Plankinton Ave., Suite # 207
Milwaukee, WI 53203
Telephone: (414) 488-1822
jbb@bartoncerjak.com

*Liaison Counsel for Lead Plaintiff*

Christopher F. Moriarty
SC Bar No. 100187
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
cmoriarty@motleyrice.com

*Counsel for Lead Plaintiff and Lead Counsel for the Class*

**LABATON KELLER SUCHAROW LLP**
Francis P. McConville
NY Bar No. 4740338
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com

*Counsel for Hollywood Police Officers' Retirement System and City Pension Fund for Firefighters and Police Officers in the City of Miami Beach*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Robert D. Klausner
FL Bar No. 244082
Stuart A. Kaufman
FL Bar No. 979211
7080 NW 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for City of Hollywood Police Officers' Retirement System and City Pension Fund for Firefighters and Police Officers in the City of Miami Beach*