# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

### *IN RE* FISERV, INC. SECURITIES LITIGATION

| | |
|---|---|
| CYPANGA SICAV SIF, | |
| Plaintiff, | Case No. 25-CV-1716-JPS |
| v. | |
| FISERV, INC., MICHAEL P. LYONS, and ROBERT W. HAU, | |
| Defendants. | |
| | |
| SANDRA LOMBARD, | Case No. 25-CV-1786-JPS |
| Plaintiff, | |
| v. | |
| FISERV, INC., MICHAEL P. LYONS, and ROBERT W. HAU, | |
| Defendants. | |

## 1.    INTRODUCTION

In this consolidated action, Plaintiffs Cypanga Sicav SIF ("Cypanga") and Sandra Lombard ("Lombard"), on behalf of putative classes, sue Fiserv, Inc. ("Fiserv"), Michael P. Lyons ("Lyons"), and Robert W. Hau ("Hau") (together, "Defendants") for violations of federal securities laws. Case No. 25-CV-1716, ECF No. 1 ("*Cypanga* Action"); Case No. 25-CV-1786, ECF No. 1 ("*Lombard* Action"); *Cypanga* Action, ECF No. 32 (consolidation order).

In each case, prior to their consolidation, ETHENEA Independent Investors S.A., the City of Hollywood Police Officers' Retirement System, and City Pension Fund for Firefighters and Police Officers in the City of Miami Beach (collectively, "Movants") moved to intervene, vacate the deadline for the filing of lead plaintiff motions, and transfer the action to the Southern District of New York for consolidation with *City of Hollywood Police Officers' Retirement System v. Fiserv, Inc.*, Case No. 25-CV-6094 (S.D.N.Y. July 24, 2025) ("SDNY Action"). *Cypanga* Action, ECF No. 4; *Lombard* Action, ECF No. 3. Both motions are fully briefed. *Cypanga* Action, ECF Nos. 5, 18, 20; *Lombard* Action, ECF Nos. 4, 13, 14. This Order addresses and grants both motions insofar as they seek intervention and transfer, and denies them without prejudice insofar as they seek to vacate the deadline for the filing of lead plaintiff motions. The consolidated action will be transferred to the Southern District of New York for further disposition.

## 2. BACKGROUND

Fiserv, a publicly traded company headquartered in Milwaukee, Wisconsin, is a provider of financial technology and transaction processing services for financial institutions and retail merchants. SDNY Action, ECF No. 1 at 2–3, 7; *Cypanga* Action, ECF No. 1 at 2, 4; *Lombard* Action, ECF No. 1 at 5.

### 2.1 Allegations in SDNY Action

The defendants in the SDNY Action are:

- Fiserv;

- Frank J. Bisignano ("Bisignano"), Fiserv's President until January 2025 and its Chief Executive Officer and Chairman of its Board of Directors until May 2025;

- Lyons, Fiserv's President since January 2025 and Chief Executive Officer since May 2025;

- Hau, Fiserv's Chief Financial Officer; and

- Kenneth F. Best ("Best"), Fiserv's Chief Accounting Officer.

SDNY Action, ECF No. 1 at 7–8.

The complaint in the SDNY Action alleges that the defendants misrepresented Fiserv's organic growth and falsely assured Fiserv's investors of strong financial momentum, despite internal data showing material deterioration. *See id.* at 5. The complaint specifically focuses on Fiserv's inflated representations about the performance of its Clover product:

> This case is about how Fiserv misled investors by artificially inflating its growth numbers through compelled migration of legacy customers using Payeezy, the Company's older point-of-sale ("POS") platform, to Clover, its expensive and feature-heavy POS platform. As this forced migration increased Fiserv's headline growth numbers, Defendants falsely claimed that this growth was being driven by new customers organically signing up for Clover. . . . This complaint alleges that, throughout the Class Period [defined below], Defendants misled investors by failing to disclose that: (a) due to cost issues and other problems with its Payeezy platform, Fiserv forced Payeezy merchants to migrate to its Clover platform; (b) Clover's revenue growth and [gross payment volume or] GPV growth were temporarily and unsustainably boosted by these forced conversions, which concealed a slowdown in new merchant business; (c) shortly after these conversions, a significant portion of former Payeezy merchants switched to competing solutions due to Clover's high pricing, inadequate customer service, and other issues; (d) as a result of these merchant losses, Clover's GPV growth was significantly slowing, and its revenue growth was unsustainable; and (e) based on the foregoing, Fiserv's positive Class Period statements about Clover's growth

strategies, competition, attrition, GPV growth, and business prospects were materially false and misleading.

*Id.* at 2, 5.

Disclosures in April and May 2025 eventually revealed that Fiserv's growth was overstated, culminating in Fiserv announcing on July 23, 2025 that it was lowering its growth projections ("July 2025 Announcement"). *See id.* at 24–25, 27–28, 31. After each of these announcements, the price of Fiserv stock decreased. *Id.* at 6. The complaint states that the defendants' "fraud was fully revealed" as of the July 2025 Announcement. *Id.* at 31.

The SDNY Action was filed on July 24, 2025, the day after the July 2025 Announcement, and raises claims on behalf of a putative class of "all persons and entities that purchased or otherwise acquired Fiserv common stock between July 24, 2024 and July 22, 2025." *Id.* at 2. The complaint raises claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder by the United States Securities Exchange Commission ("SEC"). *Id.* at 2, 7 (citing 15 U.S.C. §§ 78j(b) and 78t(a); and 17 C.F.R. § 240.10b-5), 38–39.

### 2.2    Allegations in *Cypanga* and *Lombard* Actions

The *Cypanga* and *Lombard* Actions were respectively filed on November 4, 2025 and November 14, 2025, over three months after the SDNY Action was filed. *Cypanga* Action, ECF No. 1 at 28; *Lombard* Action, ECF No. 1 at 20. The defendants in each action are Fiserv, Lyons, and Hau. *Cypanga* Action, ECF No. 1 at 4; *Lombard* Action, ECF No. 1 at 5.

The complaints in both actions discuss the July 2025 Announcement that is highlighted in the SDNY Action. *Cypanga* Action, ECF No. 1 at 5–8; *Lombard* Action, ECF No. 1 at 7–8. However, both complaints assert claims on behalf of classes of people and entities that purchased Fiserv stock *after*

that announcement, between July 23, 2025 and October 28, 2025 or October 29, 2025. *Cypanga* Action, ECF No. 1 at 2; *Lombard* Action, ECF No. 1 at 2.

The basic premise of the *Cypanga* Action is that Fiserv (1) represented in July 2025 that its guidance changes at that time "were based on a review, termed a 're-underwrit[ing]' of [its] new initiatives and products" but that those guidance changes were "fundamentally sound" then (2) admitted on October 29, 2025 ("October 2025 Announcement") that its July 2025 Announcement was imprudent and based on inappropriate assumptions. *Cypanga* Action, ECF No. 1 at 2–3, 8 (first brackets in original). The day of and the day after the October 2025 Announcement, the price of Fiserv stock decreased. *Id.* at 12, 15.

The basic premise of the *Lombard* Action is similar. That complaint alleges that Lyons, who took over as President then Chief Executive Officer for Bisignano, made misleading statements about the stability of his transition, "assur[ing] investors on July 23, 2025 that Fiserv's . . . guidance had been adequately 'refined'" but admitting in the October 2025 Announcement that "Fiserv had embedded unrealistic assumptions in its guidance." *Lombard* Action, ECF No. 1 at 2–3. The day of the October 2025 Announcement, the price of Fiserv stock decreased. *Id.* at 4.

Both complaints raise claims under §§ 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. *Cypanga* Action, ECF No. 1 at 2, 3 (citing 15 U.S.C. §§ 78j(b) and 78t(a); 17 C.F.R. § 240.10b-5), 21–23; *Lombard* Action, ECF No. 1 at 2 (citing same), 4, 18–19.

### 2.3    Procedural History

The Private Securities Litigation Reform Act ("PSLRA") requires the plaintiff, within twenty days of the filing of a securities complaint, to

> cause to be published, in a widely circulated national business-oriented publication . . . a notice advising members of the purported plaintiff class[,] . . . of the pendency of the action, the claims asserted therein, and the purported class period; and . . . that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i). The lead plaintiff is "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.* at § 78u-4(a)(3)(B)(i).

The plaintiffs in the SDNY Action published such notice on July 24, 2025, advising that lead plaintiff motions in that action had to be filed by September 22, 2025. *Cypanga* Action, ECF No. 18-5 at 2 (reproducing *Labaton Keller Sucharow LLC Files Securities Class Action Against Fiserv, Inc. and Certain of Its Executives*, BUS. WIRE (July 24, 2025 at 3:17 p.m. EDT), https://www.businesswire.com/news/home/20250724563353/en/Labaton-Keller-Sucharow-LLP-Files-Securities-Class-Action-Against-Fiserv-Inc.-and-Certain-of-Its-Executives [perma.cc/JP63-AJXZ] (last visited Apr. 9, 2026).

Movants have now been appointed as lead plaintiffs in the SDNY Action. SDNY Action, ECF No. 45 (Nov. 17, 2025).[1]

Cypanga published such notice on November 4, 2025, advising that lead plaintiff motions in the *Cypanga* Action had to be filed by January 5, 2026. *Scott+Scott Attorneys at Law LLP Files Securities Class Action Against Fiserv, Inc. (NYSE: FI)*, GLOBE NEWSWIRE (Nov. 4, 2025 at 4:33 p.m. ET),

---

[1]The SDNY Action is stayed pending this Court's disposition of the instant motions to intervene and transfer. *See* SDNY Action, ECF No. 55 (Jan. 27, 2026).

https://www.globenewswire.com/news-release/2025/11/04/3180932/0/en/Scott-Scott-Attorneys-at-Law-LLP-Files-Securities-Class-Action-Against-Fiserv-Inc-NYSE-FI.html [perma.cc/68DN-PJ5W] (last visited Apr. 9, 2026).

Lombard published such notice on November 14, 2025, advising that lead plaintiff motions in the *Lombard* action had to be filed by January 5, 2026. *SHAREHOLDER ALERT: Fiserv, Inc. Sued For Securities Fraud by Block & Leviton LLP; January 5 Deadline To Seek To Serve As Lead Plaintiff*, GLOBE NEWSWIRE (Nov. 14, 2025 at 2:49 p.m. ET), https://www.globenewswire.com/news-release/2025/11/14/3188558/23044/en/SHAREHOLDER-ALERT-Fiserv-Inc-Sued-For-Securities-Fraud-by-Block-Leviton-LLP-January-5-Deadline-To-Seek-To-Serve-As-Lead-Plaintiff.html [perma.cc/B3GQ-DGYU] (last visited Apr. 9, 2026).

Cypanga and two other entities all moved for appointment as lead plaintiff and counsel in the *Cypanga* action. *Cypanga* Action, ECF Nos. 21 (motion by Northern California Pipe Trades Trust Funds ("NCPTTF")), 25 (motion by Cypanga), and 28 (motion by Employees Retirement System of Hawaii ("ERSH")); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i) (providing for appointment of a lead plaintiff). ERSH moved for appointment as lead plaintiff and counsel in the *Lombard* Action. *Lombard* Action, ECF No. 15.

NCPTTF and ERSH's motions also sought consolidation of the *Cypanga* Action and the *Lombard* Action, which the Court granted, leaving for later consideration the matter of appointment of a lead plaintiff and counsel in the consolidated action. *Cypanga* Action, Jan. 6, 2026 text order and ECF No. 32 (Feb. 5, 2026); *Lombard* Action, ECF No. 19 (Feb. 5, 2026).

Additional facts related to the instant motions are included in the analysis below where pertinent.

**3.    INTERVENTION**

Movants seek leave to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a) or, alternatively, permissive intervention pursuant to Rule 24(b). *Cypanga* Action, ECF No. 5 at 11–14; *Lombard* Action, ECF No. 4 at 10–13. Rule 24 contemplates intervention as of right in certain circumstances and permissive intervention in others. FED. R. CIV. P. 24(a)–(b). Cypanga opposes Movants intervening as of right under Rule 24(a) but does not oppose permissive intervention under Rule 24(b)(1). *Cypanga* Action, ECF No. 18 at 13–14. Lombard adopts Cypanga's brief and therefore this concession as to permissive intervention. *Lombard* Action, ECF No. 13 at 3.

The Court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). In exercising its discretion, the Court looks to "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights" as well as whether it has "independent jurisdiction" over the would-be intervenor's claims. *Id.* at 24(b)(3); *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 775 (7th Cir. 2007) (citing *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.,* 69 F.3d 1377, 1381 (7th Cir. 1995)).

All criteria are satisfied here. Cypanga, Lombard, and Movants all raise legal claims under §§ 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. The Court undoubtedly has independent jurisdiction over Movants' claims, which are federal causes of action. *See* 28 U.S.C. § 1331. Although there is some dispute as to whether the factual bases of their claims render the three cases sufficiently related to warrant transfer, *see infra*

Section 4, the parties do not dispute that their complaints all arise from common facts: Fiserv's and its executives' representations to investors from 2024 to 2025 and the resulting impact on Fiserv's stock value. Permitting Movants to intervene will not unduly delay or prejudice Cypanga's or Lombard's rights because all these cases are still in their infancy and none have proceeded to discovery. *See supra* note 1. These factors, combined with Cypanga, Lombard, and Movants' apparent agreement that Movants can validly intervene under Rule 24(b)(1)(B), lead the Court to grant Movants' motion and to permit Movants to intervene in this consolidated action. Because permissive intervention is granted, the Court will not address the parties' arguments regarding intervention as of right.

**4.      TRANSFER AND RELATED MATTERS**

The Court now considers Movants' request to transfer this case to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a), for consolidation with the SDNY Action. *Cypanga* Action, ECF No. 5 at 16–19; *Lombard* Action, ECF No. 4 at 16–18.[2] The parties' arguments for and against transfer are bound up in the factual interrelatedness, or lack thereof, of the SDNY, *Cypanga*, and *Lombard* Actions. *See Cypanga* Action, ECF No. 5 at 7–8 and 16–17 (arguing that transfer to SDNY is proper because "[a] related securities action arising out of the same core facts is already pending" and that "the facts and legal theories giving rise to the claims in both actions are the same"); *id.*, ECF No. 18 at 8 – 11 and 18 ("The Transfer Motion Rests Almost Entirely on the Incorrect Notion that the Wisconsin and New York

---

[2]The *Lombard* briefing is largely duplicative of that in *Cypanga*. *Compare Cypanga* Action, ECF No. 5, *with Lombard* Action, ECF No. 4; *Lombard* Action, ECF No. 13 at 2 (incorporating opposition brief in *Cypanga*) and ECF No. 14 at 2 (incorporating Movants' reply brief in *Cypanga*). Accordingly, the Court will generally cite only to the briefing in *Cypanga*, except where noted.

Actions are Identical"); *id.*, ECF No. 20 *generally*; *see also Lombard* Action, ECF No. 13 at 2–4 and ECF No. 14 at 3.

Movants also request that the Court vacate the January 5, 2026 deadline for lead plaintiff motions in both the *Cypanga* and the *Lombard* Actions, arguing that Cypanga and Lombard's issuance of notices of that deadline was inconsistent with the PSLRA in light of the relatedness of their cases to the SDNY Action. *Cypanga* Action, ECF No. 5 at 9–11, 14–16; *Lombard* Action, ECF No. 4 at 8–10, 13–16; *see also supra* Section 2.3 (noting that lead plaintiff motions were filed but briefing thereon is stayed).

The Court will address the issue of transfer first. *See Baker v. Cassava Scis., Inc.*, No. 24 C 977, 2024 WL 3580627, at *2–3, 7–8 (N.D. Ill. May 29, 2024) (considering motion to transfer before motion to vacate lead plaintiff deadline in similar procedural posture). Both motions will be granted insofar as they seek transfer of the case to the Southern District of New York. The request to vacate the deadline for lead plaintiff motions will be denied without prejudice.

### 4.1    Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought . . . ." 28 U.S.C. § 1404(a). "To qualify for transfer under § 1404(a), [Movants] must demonstrate that '(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and the witnesses; and (4) transfer would serve the interest of justice.'" *Baker*, 2024 WL 3580627, at *7 (quoting *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007)).

"In assessing the merits of a § 1404(a) request, the district court is vested with broad discretion to weigh all relevant factors and to determine if, on balance, the action would proceed more expeditiously and the ends of justice be better served if transfer were effected." *Pikofsky v. Jem Oil*, 607 F. Supp. 727, 731 (E.D. Wis. 1985) (citing *Kline v. Consol. Rail Corp.*, 461 F. Supp. 326, 327 (E.D. Pa. 1978)). The Court performs a "flexible and individualized analysis." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

With respect to whether venue is proper—factors (1) and (2) above— and as relevant here, "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b).

"With respect to the convenience evaluation"—factor (3) above— "courts generally consider the availability of and access to witnesses, . . . each party's access to and distance from resources in each forum, . . . the location of material events[,] and the relative ease of access to sources of proof." *Rsch. Automation*, 626 F.3d at 978 (collecting cases).

Finally, "[t]he 'interest of justice[,]'"—factor (4) above—"is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Id.* at 978 (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 626–27 (1964)). In considering this element, the Court looks to factors like docket congestion and likely speed to trial in both districts, each court's familiarity with the relevant law, the respective desirability of

resolving the controversies in each locale, and the relationship of the community to the controversy. *Id.* (collecting cases).[3]

### 4.2    Proper Venue

Movants argue that, as a threshold matter, the *Cypanga* and *Lombard* Actions "could have been brought originally in" the Southern District of New York because they are factually related to the SDNY Action. *Cypanga* Action, ECF No. 5 at 16–17 (citing 28 U.S.C. § 1404(a)). The Court therefore analyzes the factual relatedness of the cases under the venue factor of the transfer analysis.

Movants contend that the *Cypanga* and *Lombard* Actions "aris[e] out of the same course of conduct" as the SDNY Action: "misrepresentations regarding Fiserv's organic growth metrics and business performance." *Id.* at 7 (citations omitted). They argue that the October 2025 Announcement discussed in Cypanga and Lombard's complaints, and on which Cypanga and Lombard rely to differentiate their complaints from the SDNY Action, "is a clear continuation of the exact same fraud" alleged in the complaint in the SDNY Action. *Id.* (emphasis omitted). Movants further contend that the

---

[3]Cypanga and Lombard formulate the standard as requiring the Court to weigh "public and private [interest] factors." *Cypanga* Action, ECF No. 18 at 20 (citing *Abdou v. Mahany*, No. 18-CV-1780-JPS, 2019 WL 764742, at *2 (E.D. Wis. Feb. 21, 2019)); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981) (referring to "public and private interest factors"). The public and private interest factors noted in *Piper Aircraft* and articulated in *Abdou* more or less track the convenience and interest of justice factors articulated in *Research Automation*. *Compare Rsch. Automation*, 626 F.3d at 978, *with Abdou*, 2019 WL 764742, at *2 (noting that "[p]rivate interest factors include the parties' ease of access to evidence, the availability of witnesses, and various other administrative and logistical details," and that "[p]ublic interest factors include the local interest of the controversy, the law applied to the case, and the relative fairness of burdening citizens in an unrelated forum with jury duty" (citations omitted) (internal quotation marks omitted)). The Court will apply the factors as described in *Research Automation*.

Southern District of New York is "where [D]efendants carried out their alleged fraudulent scheme and disseminated the challenged statements concerning [Fiserv's] business." *Id.* at 17 (citing SDNY Action, ECF No. 1 at 7). The complaint in the SDNY Action asserts that venue is proper in that district because Fiserv maintains executive offices in the district, the defendants in that action conduct business there, Fiserv's stock trades on the New York Stock Exchange, and "a significant portion of [the d]efendants' actions took place" there. SDNY Action, ECF No. 1 at 7.[4]

Cypanga and Lombard contend that this consolidated action is distinct from the SDNY Action because the consolidated action involves "different time periods," "different misstatements," "different defendants," "different theories of fraud," "different class members," and "different loss causation dates." *Cypanga* Action, ECF No. 18 at 8. Specifically, Cypanga and Lombard emphasize that the complaint in the SDNY Action relates to Fiserv's "failure to disclose [its] reliance on Payeezy conversions to boost Clover's growth." *Id.* at 9. In contrast, they argue, their complaints in this consolidated action pertain to a "totally different subject matter," challenging "Defendants' assurances regarding [Fiserv's] financial projections and the process undertaken by [Fiserv] management [including Lyons] to obtain comfort regarding those projections." *Id.* at 10; *see also Lombard* Action, ECF No. 13 at 2 (arguing that the consolidated action "does not even mention Clover fraud" and "centers on misleading statements made by . . . Lyons in connection with his transition to CEO").

---

[4]The Court accepts the allegations in each complaint as true for purposes of evaluating the motion to transfer. *See Williams v. State Farm Mut. Auto. Ins. Co.*, 678 F. Supp. 3d 980, 994 (N.D. Ill. 2023) (citing *In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008) and *Crothall Laundry Servs., Inc. v. OSF Health Care Sys.*, No. 17-cv-8928, 2018 WL 1695364, at *4 (N.D. Ill. Apr. 6, 2018)).

With respect to venue, Cypanga alleges in its complaint that "[s]ubstantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in" the Eastern District of Wisconsin. *Cypanga* Action, ECF No. 1 at 3. It alleges that the acts complained of, including "the dissemination of materially false and/or misleading information, occurred in substantial part" in the Eastern District of Wisconsin. *Id.* It also points out that Fiserv is headquartered in Milwaukee, *id.* at 3, 4, which the Eastern District of Wisconsin encompasses. To establish venue, Lombard points to the facts that Fiserv is headquartered in the Eastern District and that it "conducts substantial business here." *Lombard* Action, ECF No. 1 at 5.

The Court finds that the conduct alleged in the *Cypanga* and *Lombard* Actions is best understood as a continuation of the conduct alleged in the SDNY Action. Cypanga and Lombard make much of the fact the SDNY Action focuses primarily on the defendants' alleged misleading statements regarding Clover, whereas their complaints focus on a broader set of allegedly misleading "assurances regarding [Fiserv's] financial projections," which occurred "after the end of the class period in the [SDNY] Action." *Cypanga* Action, ECF No. 18 at 8–10. It is true that the complaint in the SDNY Action is framed around statements regarding Clover's growth as how Fiserv and its executives misled investors. *See* SDNY Action, ECF No. 1 at 2 ("This case is about . . . ."). But the misrepresentations alleged in the *Cypanga* and *Lombard* Actions could plausibly encompass the alleged Clover fraud. *See Cypanga* Action, ECF No. 1 at 5, 7 (Lyons stating in July 2025 that Fiserv "had a . . . chance to re-underwrite . . . [and] restudy" various initiatives, was "resetting the parts of how small businesses run their businesses off the Clover platform," and was "giving [investors] the most updated look on timing"); *Lombard* Action,

ECF No. 1 at 11 (same). That Cypanga and Lombard chose to allege additional misleading or fraudulent statements in their complaints merely reflects (1) that additional facts became available after the SDNY Action was filed and (2) counsel's strategic drafting choices—not necessarily that Fiserv and its executives embarked on two separate and easily distinguishable paths of fraud.

Cypanga and Lombard's reliance on an artificial temporal distinction between the July 2025 Announcement and the October 2025 Announcement is likewise unpersuasive. Cypanga and Lombard state that Fiserv "provided investors with false assurances that its financial projections were sound" in the July 2025 Announcement, which were later revealed to be false in the October 2025 Announcement. *Cypanga* Action, ECF No. 18 at 10 (citing *id.*, ECF No. 1 at 2–3). In other words, Cypanga and Lombard are arguing that the July 2025 Announcement was only revealed as misleading, specifically as to Defendants' statements regarding re-underwriting and the assumptions underlying prior growth projections, when the October 2025 Announcement came out—making the relevant fraud within the July 2025 Announcement distinct from that alleged in the SDNY Action, which was misleading specifically as to Clover's growth. This argument splits hairs, asking the Court to assume that the July 2025 Announcement was only misleading (insofar as Cypanga and Lombard challenge it) *as of October 2025*, while it was misleading (insofar as the SDNY Action plaintiffs challenge it) *as of July 2025*. Again, the fact that Cypanga and Lombard chose to allege a more expansive theory of fraud based on facts that emerged only after the SDNY Action was filed does not necessarily support a conclusion that the complaints are completely separate. The Court agrees with Movants that the complaints in all three

actions similarly allege that Fiserv and its executives engaged in a pattern of "misrepresent[ing] growth metrics and guidance while growth slowed" and that this pattern involved both the July 2025 and October 2025 Announcements. *Cypanga* Action, ECF No. 20 at 10.

Importantly, Movants repeatedly note that if these actions are all consolidated in the Southern District of New York, the operative complaint will be amended to include Cypanga and Lombard's allegations related to the July 23, 2025 to October 2025 time period. *Id.* at 5–6, 8, 13 n.6; *Cypanga* Action, ECF No. 5 at 11, 14. Cypanga and Lombard do not respond to these assurances. For the reasons discussed later in Section 4.4, the Court is persuaded that amendment—rather than proceeding in separate actions—is the optimal way to handle all of the plaintiffs' assorted allegations against Fiserv and its executives.

Also important to the analysis, Cypanga and Lombard's complaints do not preclude venue in the Southern District of New York. To the contrary, the Court finds that venue for this consolidated action could be proper under 28 U.S.C. § 1391 in either the Southern District of New York or the Eastern District of Wisconsin based on the allegations in the complaints.[5]

The *Cypanga* complaint says that the allegedly misleading acts, "including the dissemination of materially false and/or misleading information, occurred in substantial part" in the Eastern District of Wisconsin. *Cypanga* Action, ECF No. 1 at 3. Accepting this allegation as true,

---

[5]By moving for transfer under § 1404(a), Movants implicitly concede that venue for the consolidated action could be appropriate in the Eastern District of Wisconsin. *See Baker*, 2024 WL 3580627, at *7 (§ 1404(a) transfer requires a showing that venue is proper in both the district in which the action was filed and the district to which it is sought to be transferred (citation omitted)).

venue could be proper in the Eastern District of Wisconsin because "[i]n a securities fraud case, the material events are the 'creation *and dissemination* of the' allegedly false statements in the complaint." *Coll. Ret. Equities Fund v. Boeing Co.,* No. 22 CV 3845, 2025 WL 1207313, at *3 (N.D. Ill. Apr. 25, 2025) (emphasis added) (quoting *Ballotti v. Oppenheimer Funds, Inc.,* No. 10-C-50116, 2011 WL 13382871, at *3 (N.D. Ill. Feb. 23, 2011)).

But neither Cypanga's nor Lombard's complaint says anything about where Defendants made the allegedly misleading statements in the July 2025 and October 2025 Announcements—that is, where the statements were "creat[ed]." *Id.; see generally Cypanga* Action, ECF No. 1 at 5–12; *Lombard* Action, ECF No. 1 at 8–13; *Coll. Ret. Equities Fund,* 2025 WL 1207313, at *3 (citation omitted). Cypanga and Lombard's complaints discuss only dissemination without attribution to any specific Defendant. The lack of clarity as to the *creation* of the relevant statements cuts against a finding that venue for the consolidated action must *only* be proper in the Eastern District of Wisconsin. *See Paul v. Lands' End, Inc.,* 742 F. Supp. 512, 513 (N.D. Ill. 1990) (finding venue proper in district where the defendant was headquartered and from which "documentation . . . emanated" and "corporate policy and decisions [were] made" despite "misrepresentations . . . allegedly contained in press releases and other documents" having been "disseminated" in the district where the case was filed).

True, Cypanga and Lombard assert that because Fiserv has its headquarters in Milwaukee, "the events underlying th[e] [*Cypanga* and *Lombard*] Action[s] likely largely occurred in this District." *Cypanga* Action, ECF No. 18 at 21. But, critically, they raise no challenge to the statements in the SDNY complaint that Fiserv has an executive office in New York and that Fiserv, Lyons, and Hau (defendants in both this consolidated action

and in the SDNY Action) executed a "significant portion" of the allegedly unlawful acts—at least up to July 23, 2025—in New York. SDNY Action, ECF No. 1 at 7. Even construing Cypanga and Lombard's complaints as saying that Defendants *made* the allegedly misleading statements in or from the Eastern District of Wisconsin—which, as noted above, is not clear from the complaints, which only discuss dissemination—the complaint in the SDNY Action points in a different direction as to where Defendants made the allegedly misleading statements, or at least those statements up to and including the July 2025 Announcement. The Court cannot resolve, at this stage of the case, which allegations are true for purposes of determining where the allegedly misleading statements were created, nor in turn where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

The factual relatedness of the *Cypanga* and *Lombard* Actions to the SDNY Action counsels in favor of transfer. Meanwhile, the limited facts available in the complaints show that this consolidated action could be appropriately venued in either the Southern District of New York or the Eastern District of Wisconsin. Overall, the venue factor is neutral in the transfer analysis. *Baker*, 2024 WL 3580627, at *7 (citation omitted).

### 4.3    Convenience

The Court next evaluates whether the Southern District of New York is "more convenient for both the parties and the witnesses" in the *Cypanga* and *Lombard* Actions. *Baker*, 2024 WL 3580627, at *7 (citation omitted). Cypanga and Lombard argue that because the events in the consolidated action "likely largely occurred in [the Eastern District of Wisconsin], . . . the relevant documents and witnesses are all likely located in this District." *Cypanga* Action, ECF No. 18 at 21. Movants respond that "the location of

documents is largely neutral because discovery is electronic, and key witnesses can be deposed in Wisconsin or elsewhere regardless of the forum." *Cypanga* Action, ECF No. 20 at 14–15 (citing *Bogard v. TikTok, Inc.*, 725 F. Supp. 3d 897, 909 (S.D. Ind. 2024)).

As discussed in Section 4.2, it is not clear where the material events in the *Cypanga* and *Lombard* Actions occurred. *See Rsch. Automation*, 626 F.3d at 978 (noting "the location of material events" as part of the convenience analysis). For this reason, the Court has difficulty accepting Cypanga and Lombard's conclusory assertion that relevant documents and witnesses are located in the Eastern District of Wisconsin. At the same time, Movants also do not address whether relevant documents and witnesses are likely to be located in the Southern District of New York. More relevantly, though, Cypanga and Lombard have not explained why electronic discovery will not be available or appropriate in the consolidated action, nor have they explained why important witnesses who happen to be located in the Eastern District of Wisconsin cannot be deposed here even if the consolidated action is adjudicated in the Southern District of New York.

In conclusion, the convenience factor appears neutral or, at best, slightly favors transferring the *Cypanga* and *Lombard* Actions to the Southern District of New York.

### 4.4    Interest of Justice

The Court finally evaluates whether transferring *Cypanga* and *Lombard* to the Southern District of New York "would serve the interest of justice." *Baker*, 2024 WL 3580627, at *7 (citation omitted). Movants argue that transfer to the Southern District of New York would "promote judicial efficiency" and mitigate the risks of "inconsistent rulings, duplicative discovery, and needless expenditure of judicial resources." *Cypanga* Action,

ECF No. 5 at 17 (citations omitted). Cypanga and Lombard, on the other hand, contend that the Eastern District of Wisconsin "has a far greater interest than the Southern District of New York" in addressing their claims because the consolidated action presents "claims against a Wisconsin corporation headquartered in Milwaukee." *Cypanga* Action, ECF No. 18 at 21.

The Court is not persuaded by Cypanga and Lombard's contention that simply because Fiserv is headquartered in Milwaukee, the Milwaukee community has a greater interest in resolving the claims in the consolidated action. Fiserv is a global company and the classes in each action are not limited to persons residing in Wisconsin. *Cypanga* Action, ECF No. 1 at 2, 15; *Lombard* Action, ECF No. 1 at 2, 16–17. Considerations of "the respective desirability of resolving the controversies in each locale[] and the relationship of each community to the controversy" do not strongly favor retaining the consolidated action in the Eastern District of Wisconsin. *Rsch. Automation*, 626 F.3d at 978.

While both this District and the Southern District of New York are equally capable of applying the body of federal securities laws, the Court notes that the Southern District of New York handles a much higher volume of securities cases, conferring greater familiarity with the applicable law. *See id.* (directing the Court to consider "each court's familiarity with the relevant law" (citation omitted)); Kevin LaCroix, *Federal Court Securities Class Action Lawsuit Filings Increased in 2024*, THE D&O DIARY (Jan. 5, 2025), https://www.dandodiary.com/2025/01/articles/securities-litigation/federal-court-securities-class-action-lawsuit-filings-increased-in-2024/ [perma.cc/U92H-C2JW] (last visited Apr. 20, 2026) (noting that the Southern

District of New York received 50 of 222 federal securities class action lawsuits filed in 2024, and the highest of any federal district court).

Finally, and most importantly, in light of the factual interrelatedness of the consolidated action and the SDNY Action, avoiding duplication of efforts and inconsistent rulings is, as Movants point out, a worthy goal. *See, e.g.*, *Keystone Auto. Indus., Inc. v. Repairify, Inc.*, No. 23 C 2689, 2025 WL 3785420, at \*2 (N.D. Ill. Feb. 19, 2025) (finding interest of justice considerations, including "avoiding inconsistent rulings," favored transfer pursuant to § 1404(a)). Cypanga and Lombard's concerns about any factual differences between the complaints are best addressed through amendment of the complaint in the SDNY Action, rather than letting the cases proceed separately.

All told, the interest of justice factor weighs heavily in favor of transfer. Because the Court resolves this factor on other considerations, it need not address the parties' arguments regarding the "first to file" rule. *Cypanga* Action, ECF No. 5 at 18–19; ECF No. 18 at 19–20.

For all these reasons, Movants' motions will be granted insofar as they seek transfer of the consolidated action to the Southern District of New York. The Court will direct the Clerk of Court to transfer this consolidated action to the Southern District of New York.

### 4.5    Vacatur of Lead Plaintiff Deadline and Further Analysis

Movants also request that the Court vacate the January 5, 2026 deadline for lead plaintiff motions in both the *Cypanga* and the *Lombard* Actions, arguing that Cypanga and Lombard's issuance of notices of that deadline was inconsistent with the PSLRA in light of the relatedness of their cases to the SDNY Action. *Cypanga* Action, ECF No. 5 at 9–11, 14–16; *Lombard* Action, ECF No. 4 at 8–10, 13–16. The deadline for lead plaintiff

motions has long since passed and, as noted *supra* Section 2.3, lead plaintiff motions were in fact filed in the *Cypanga* and *Lombard* Actions.[6]

Because the Court will transfer this consolidated action to the Southern District of New York, the Court will defer to the judge in the SDNY Action on further matters of case management. This includes whether consolidation of this consolidated action with the SDNY Action under Federal Rule of Civil Procedure 42 is appropriate, which Movants have not briefed under that specific Rule. *Cypanga* Action, ECF No. 5 at 9–10, 19. Rather than decide consolidation itself, the Court will stay in its lane and simply direct the Clerk of Court to transfer this action with a notation that this consolidated action is related to *City of Hollywood Police Officers' Retirement System v. Fiserv, Inc.*, Case No. 25-CV-6094.

More importantly, the Court defers to the Southern District of New York to determine—in light of any amended consolidated complaint that

---

[6]Including January 5, 2026 (the deadline itself), the deadline for lead plaintiff motions in *Cypanga* was eighteen days, including two weekends and a holiday, after the first-filed motion to, inter alia, vacate the lead plaintiff deadline finished briefing. *Cypanga* Action, ECF No. 20 (reply brief filed Dec. 19, 2025). No party asked for a provisional or expedited ruling on the request to vacate the deadline. The Court was thus unable to address the request before the deadline passed.

Similarly, the lead plaintiff motion deadline in *Lombard* was seven days, including a weekend and a holiday, after the motion to, inter alia, vacate the lead plaintiff deadline finished briefing. *Lombard* Action, ECF No. 14 (reply brief filed Dec. 30, 2025). The case was still assigned at that time to Chief Judge Pamela Pepper, *see supra* Section 2.3 (discussing consolidation of cases on February 5, 2026), who also did not address the vacatur request before the lead plaintiff deadline passed.

The parties did not discuss in the briefing on the instant motions what the Court should have done in the event that the deadline for lead plaintiff motions was not vacated before it ran or what to do with lead plaintiff motions if filed by the current deadline. In any event, the Court stayed briefing on lead plaintiff motions. *Cypanga* Action, Jan. 6, 2026 text order and ECF No. 32 at 4.

may be filed—whether the PSLRA notice in this consolidated action was improperly issued, how to address the pending motions for appointment as lead plaintiff, and whether to reissue a PSLRA notice. *See Baker*, 2024 WL 3580627, at *1 ("[B]ecause the Court is relinquishing control over this case, it will leave to the transferee court's judgment whether to vacate [the plaintiff]'s publication of a PSLRA notice."). For now, the Court will deny without prejudice Movants' request to vacate the January 5, 2026 deadline for lead plaintiff motions. The lead plaintiff motions (*Cypanga* Action, ECF Nos. 21, 25, 28; *Lombard* Action, ECF No. 15) will remain pending, and the briefing on those motions will remain stayed until such time as the Southern District of New York sees fit to direct otherwise. *See id.* at *8.

5. **CONCLUSION**

For the reasons stated herein, Movants' motion to intervene and transfer will be granted; they will be permitted to intervene in this consolidated action, and the consolidated action will be transferred to the Southern District of New York. Movants' motion will be denied without prejudice insofar as it seeks to vacate the PSLRA notice and lead plaintiff deadline. The briefing stay entered in this consolidated action—*Cypanga* Action, ECF No. 32 at 4—will be continued until further notice.

Accordingly,

**IT IS ORDERED** that ETHENEA Independent Investors S.A., the City of Hollywood Police Officers' Retirement System, and City Pension Fund for Firefighters and Police Officers in the City of Miami Beach's motions, ECF No. 4 in the *Cypanga* Action and ECF No. 3 in the *Lombard* Action, be and the same are hereby **GRANTED** insofar as they seek to intervene in this consolidated action and transfer it to the Southern District

of New York, and **DENIED without prejudice** insofar as they seek to vacate the deadline for lead plaintiff motions;

**IT IS FURTHER ORDERED** that ETHENEA Independent Investors S.A., the City of Hollywood Police Officers' Retirement System, and City Pension Fund for Firefighters and Police Officers in the City of Miami Beach be and the same are hereby permitted to intervene in this consolidated action; and

**IT IS FURTHER ORDERED** that this consolidated action be and the same is hereby **TRANSFERRED** to the United States District Court for the Southern District of New York for further disposition.

The Clerk of the Court is directed to take all appropriate steps to effectuate the transfer of this consolidated action to the Southern District of New York, including denoting that this consolidated action is related to *City of Hollywood Police Officers' Retirement System v. Fiserv, Inc.*, Case No. 25-CV-6094.

Dated at Milwaukee, Wisconsin, this 28th day of April, 2026.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Page 24 of 24